2 So.3d 101 (2008)
William Todd LARIMORE, Petitioner,
v.
STATE of Florida, Respondent.
No. SC06-139.
Supreme Court of Florida.
December 11, 2008.
As Revised on Denial of Rehearing January 29, 2009.
*103 Bill White, Public Defender, and Ward L. Metzger, Assistant Public Defender, Jacksonville, FL, for Petitioner.
Bill McCollum, Attorney General, Robert R. Wheeler, Assistant Attorney General, Bureau Chief Criminal Appeals, and Charles Richey McCoy, Senior Assistant Attorney General, Tallahassee, FL, for Respondent.
PARIENTE, J.
This case is before the Court for review of the decision of the First District Court of Appeal in Larimore v. State, 917 So.2d 354 (Fla. 1st DCA 2005). The district court certified that its decision was in direct conflict with the decision of the Second District Court of Appeal in Gordon v. Regier, 839 So.2d 715 (Fla. 2d DCA 2003). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
In this case, we interpret the Involuntary Civil Commitment of Sexually Violent Predators Act, sections 394.910-.931, Florida Statutes (2004), commonly known as the "Jimmy Ryce Act" (the Act), and conclude that the Act requires that an individual be in lawful custody when the State takes steps to initiate civil commitment proceedings in order for the circuit court to have jurisdiction to adjudicate the commitment petition. For the reasons expressed below, *104 we quash the district court's decision in Larimore and approve of the Second District's decision in Gordon.

FACTS AND PROCEDURAL HISTORY
This case arises from the First District's decision denying Larimore's petition for writ of prohibition, in which Larimore sought to prevent civil commitment proceedings against him by the State pursuant to the Act. Larimore, 917 So.2d at 355. The facts are summarized in the First District's opinion:
On August 29, 1991, after pleading guilty to lewd and lascivious acts on a child under 16 years of age in two separate cases, Larimore was sentenced pursuant to the guidelines to 15 years in prison in one case followed by five years of probation in the second case. On October 10, 1998, Larimore was released from prison due to the award of gaintime, and began serving probation. On February 29, 2000, Larimore's probation was revoked, and he was sentenced to five years in prison. On August 12, 2002, [the First District] held that Larimore was entitled to credit pursuant to Tripp v. State, 622 So.2d 941 (Fla.1993), for the 15 years served on his prison sentence (which included both actual prison time served and gaintime) which had the effect of erasing his five-year sentence for violating probation. Larimore v. State, 823 So.2d 287 (Fla. 1st DCA 2002). Shortly thereafter, based on the revocation of probation, the Department of Corrections forfeited the gaintime (2,830 days) earned on Larimore's 15-year prison sentence, relying on section 944.28(1), Florida Statutes.
On November 23, 2004, the state filed a petition to have Larimore declared a sexually violent predator and involuntarily committed pursuant to the Jimmy Ryce Act. However, on December 10, 2004, [the First District] held that Larimore was entitled to immediate release from custody because forfeiture of Larimore's gaintime was not authorized pursuant to section 944.28(1) where Larimore's offense occurred before the effective date of the amendment to section 944.28 authorizing the forfeiture of gaintime upon revocation of probation. Larimore v. Fla. Dep't of Corr., 910 So.2d 847 (Fla. 1st DCA 2004), review denied, 905 So.2d 125 (Fla.2005). Larimore then filed a motion to dismiss the state's commitment petition under the Jimmy Ryce Act, arguing that he was not in lawful custody on the effective date of the Act. After the trial court denied the motion to dismiss, this petition for writ of prohibition followed [in the First District].
Larimore, 917 So.2d at 355. The district court correctly concluded that even though Larimore was not in custody when the Jimmy Ryce Act was enacted, his subsequent incarceration in 2000 generally subjected him to application of the Act. Id. at 356-57. However, the district court also concluded that the fact that Larimore was not in lawful custody when the commitment petition was filed in 2004 was not grounds upon which to grant the writ of prohibition. See id. at 356. It is this latter point upon which our decision turns.
Relying on provisions of the Act that provide that compliance with certain requirements and time limitations are not jurisdictional, the district court held that "jurisdiction under the amended Act is not conditioned on a person being `in custody' on the date the petition is filed." Id. at 357. The First District therefore concluded that although Larimore was not in lawful custody when the State filed its petition on November 23, 2004, id. at 356, the trial court nevertheless had jurisdiction to adjudicate *105 the commitment petition. Id. at 358. The First District explained:
While the Act as amended clearly contemplates that a commitment petition should be filed before a person is released from total confinement, there is nothing in the Act that provides that the petition must be filed before the person's release. Rather, the Act clearly states that its time limitations are not jurisdictional and do not prevent the state from proceeding pursuant to the Act even if the person is released from custody.
Id. at 357. The First District also certified conflict on this issue with the Second District's decision in Gordon, in which the Second District concluded that proceedings under the Act could not be initiated against a person who was no longer held in lawful custody by the State. Larimore, 917 So.2d at 357-58.
The court in Gordon had before it a case in which the individual had been released from the custody of the Department of Corrections and was in the civilian population when, two days after his release, the State obtained a warrant for his arrest in order that commitment proceedings could be filed against him. Gordon, 839 So.2d at 717. Only after he was placed back into custody did the multidisciplinary team make its evaluation and recommendation, after which an order of probable cause under the Act was entered. Id. Gordon filed a motion to dismiss alleging that he "was not in custody for purposes of the Act at the time the petition for involuntary commitment was filed." Id. The Second District agreed and held that "for the Act to apply, the person must be in custody or in `total confinement,'" id., which the court interpreted to mean "that the person in question is being held at a secure facility." Id. at 718. The Second District also concluded that the seizure of Gordon in order to commence commitment proceedings was unlawful and could not qualify as custody for purposes of the Act. See id. & n. 4.
The Gordon court reasoned that "the Act contemplates that the circuit court make a determination prior to the expiration of the incarcerative sentence as to whether probable cause exists to hold the person as a sexually violent predator. This is consistent with our legal historical precedents requiring a probable cause determination prior to a person's seizure." Id. at 719. The Gordon court also found that section 394.9135 provides a "safety valve for a situation where `the anticipated release from total confinement of a person who has been convicted of a sexually violent offense becomes immediate.'" Id. As to the jurisdictional disclaimer provisions, the Gordon court stated: "We do not interpret subsection (4) to mean that the state attorney or the DCF [Department of Children and Family Services] may start proceedings against a person who is not in custody, since, as stated, that person would not be subject to the provisions of the Act." Id. at 720. The Second District concluded that "[t]here is no provision in the Act for commencing proceedings against a person under the Act where he or she is not in custody and is, in fact, living in society." Id. at 719.
The First District in Larimore chose not to follow Gordon because, in its view, Gordon did not follow the plain statutory language of the Act and could not be reconciled with this Court's decision in Tanguay v. State, 880 So.2d 533 (Fla.2004). Larimore, 917 So.2d at 358. We conclude, however, that Tanguay does not control the analysis in this case and, as explained below, that lawful custody is required to initiate Jimmy Ryce proceedings; and further that the provisions of the Act relied on by the First District, which state that certain provisions and time limitations are *106 not jurisdictional, do not constitute a statutory waiver of the lawful custody requirement contained within the overall legislative scheme.

ANALYSIS
Larimore asserts that under the terms of the Act a person must be in lawful custody for the State to initiate commitment proceedings against that individual. Because this issue is a matter of statutory interpretation, our review is de novo. See Kephart v. Hadi, 932 So.2d 1086, 1089 (Fla.2006). Because Larimore's claim is predicated solely upon a construction of the provisions of the Act, we must give great deference to the actual language used by the Legislature.
A court's purpose in construing a statute is to give effect to legislative intent, which is the polestar that guides the court in statutory construction. Bautista v. State, 863 So.2d 1180, 1185 (Fla.2003). To discern legislative intent, a court must look first and foremost at the actual language used in the statute. Id. (citing Joshua v. City of Gainesville, 768 So.2d 432, 435 (Fla.2000)). Moreover, a "statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts." Jones v. ETS of New Orleans, Inc., 793 So.2d 912, 914-15 (Fla.2001) (quoting Acosta v. Richter, 671 So.2d 149, 153-54 (Fla.1996)). "The doctrine of in pari materia is a principle of statutory construction that requires that statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature's intent." Fla. Dep't of State v. Martin, 916 So.2d 763, 768 (Fla. 2005). Similarly, "[r]elated statutory provisions must be read together to achieve a consistent whole, and ... `[w]here possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.'" Heart of Adoptions, Inc. v. J.A., 963 So.2d 189, 199 (Fla.2007) (quoting Woodham v. Blue Cross & Blue Shield, Inc., 829 So.2d 891, 898 (Fla. 2002)).
We have long recognized that "[i]f a part of a statute appears to have a clear meaning if considered alone but when given that meaning is inconsistent with other parts of the same statute or others in pari materia, the Court will examine the entire act and those in pari materia in order to ascertain the overall legislative intent." Fla. Dep't of Envtl. Prot. v. ContractPoint Fla. Parks, LLC, 986 So.2d 1260, 1265-66 (Fla.2008) (quoting Fla. State Racing Comm'n v. McLaughlin, 102 So.2d 574, 575-76 (Fla.1958)). Equally important is the "elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage." Gulfstream Park Racing Ass'n v. Tampa Bay Downs, Inc., 948 So.2d 599, 606 (Fla.2006) (quoting Hechtman v. Nations Title Ins. of N.Y., 840 So.2d 993, 996 (Fla.2003)).
Within the framework of these longstanding principles of statutory construction, we will first examine the provisions of the statutes at issue here to determine if the legislative intent was to require that a person be in lawful custody when steps are taken by the State to commit that person as a sexually violent predator. We will next examine whether any provisions of the Act dispense with the custody requirements of the Act and allow Jimmy Ryce proceedings to be initiated against a person not in lawful custody. We will also explore our prior precedent in the area of the Jimmy Ryce Act to determine if it is dispositive of the issues now before the Court.

*107 The Jimmy Ryce Act
The Florida Legislature first passed the Act in 1998, and it went into effect on January 1, 1999. See ch. 98-64, § 24, at 455, Laws of Fla. As originally enacted, the Act appeared in chapter 916, which pertains to mentally ill defendants in criminal cases. See §§ 916.31-.49, Fla. Stat. (Supp.1998); ch. 98-64, §§ 1-24, at 445-55, Laws of Fla. The Act was later transferred to chapter 394, Florida Statutes, which pertains to civil mental health commitments. See ch. 99-222, §§ 1-29, at 1372-89, Laws of Fla. Although based on a criminal conviction for a sexually violent offense, Jimmy Ryce commitment proceedings have been held to be "civil in nature." See Mitchell v. State, 911 So.2d 1211, 1213 (Fla.2005). Even so, we have repeatedly emphasized the procedural safeguards provided by the Act that ensure an individual's constitutional rights are protected. In holding the Act constitutional in the plurality opinion in Westerheide v. State, 831 So.2d 93 (Fla.2002), we specifically relied on the "range of procedural safeguards to the individuals" provided by the Act:
The parties being subjected to this state action are limited to those who have exhibited "past sexually violent behavior and [have] a present mental condition that creates a likelihood of such conduct in the future if the person is not incapacitated." Although the individual's liberty interest is at stake, that "interest is not absolute" and the "individual's constitutionally protected interest in avoiding physical restraint may be overridden even in the civil context" provided that "the confinement takes place pursuant to proper procedures and evidentiary standards." Confinement under the Ryce Act is limited to those individuals who are likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment. Further, the act provides a range of procedural safeguards to the individuals, including the assistance of counsel and mental health professionals at commitment proceedings, the right to a jury trial, the right to appeal a sexually violent predator determination, at least a yearly mental health examination to determine whether the person's condition has so changed that it is safe for the person to be discharged, the right to petition for release, and in court hearings for the release of a committed person, the state bears the burden of proving by clear and convincing evidence that the person's mental condition requires continued confinement.
Id. at 104-05 (citations and footnotes omitted) (quoting Kansas v. Hendricks, 521 U.S. 346, 356-57, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)).
Although Larimore has not raised a constitutional challenge to the Act, because the Act can impose on an individual a substantial deprivation of libertyone that is of indeterminate durationour construction of the Act must be conducted with due regard to "the basic tenets of fairness and due process." State v. Atkinson, 831 So.2d 172, 174 (Fla.2002). In this light, we first examine the provisions of the Act to determine if the Legislature intended that persons against whom civil commitment proceedings are brought must be in lawful custody when those proceedings are initiated.

Custody Under the Act
As has previously been noted by this Court, as well as by the First District Court of Appeal below, the Legislature appears to have specifically contemplated that an individual would be lawfully in the State's custody when civil commitment proceedings are commenced under the Act. State v. Goode, 830 So.2d 817, 825 (Fla. *108 2002) ("[I]t appears that the Legislature intended that the State would initiate commitment proceedings while the inmate is still incarcerated." (citing § 394.915(1), Fla. Stat. (1999))); Larimore, 917 So.2d at 357 ("[T]he Act as amended clearly contemplates that a commitment petition should be filed before a person is released from total confinement...."). The Act provides that the commitment process is initiated by the "agency with jurisdiction."[1] This is done in one of two wayseither by giving notice to the multidisciplinary team and state attorney under section 394.913(1), Florida Statutes (2004), which begins the detailed process under that section, see §§ 394.913(1)-(4), or by transferring the individual to the custody of the Department of Children and Family Services upon that person's "immediate release from total confinement" under section 394.9135(1), Florida Statutes (2004). This latter procedure is followed to initiate commitment proceedings where it is anticipated that the individual will be immediately released from "total confinement" for any reason. See § 394.9135(1), Fla. Stat. (2004).[2]
Section 394.913(1)(a) indicates that the person is to be in custody when proceedings are commenced because it specifically provides that the notice must be given to the multidisciplinary team and the state attorney at least 545 days prior to the person's anticipated release from total confinement if the person is in custody of the Department of Corrections.[3] Notice must be given at least 180 days prior to release from a residential commitment if the person is in custody of the Department of Juvenile Justice or, where the person has been found not guilty of a sexually violent offense by reason of mental incapacity or insanity, from the custody of the Department of Children and Family Services. See § 394.913(1)(b)-(c), Fla. Stat. (2004).
Specifically, section 394.913(1) provides that the agency with jurisdiction "shall give written notice to the multidisciplinary team, and a copy to the state attorney of the circuit where that person was last convicted *109 of a sexually violent offense." Subsection (1) further provides that if the person was never convicted of a sexually violent offense in Florida, but has been convicted of such an offense in another state or federal court, a copy of the notice shall be given to the state attorney of the circuit where the person was last convicted of any offense in this state. Subsection (1) provides that if the person is being confined in this state pursuant to interstate compact, notice shall also be given to the state attorney "of the circuit where the person plans to reside upon release" or, if no residence in this state is planned, the state attorney "in the circuit where the facility from which the person to be released is located." Id. (emphases added).
Subsection (2) of section 394.913 sets forth the information that the agency with jurisdiction must provide to the multidisciplinary team, including information such as the individual's name, identifying characteristics, criminal history, mental health, mental status, and documentation of institutional adjustment. Subsection (2)(e) states that, "[i]f the person was returned to custody after a period of supervision, documentation of adjustment during supervision and any treatment received" shall be provided to the multidisciplinary team.
Section 394.913(3) provides for establishment of the multidisciplinary team or teams, and states that each team shall include at least two licensed psychiatrists or psychologists. Subsection (3) also provides that the assessment and evaluation shall include a review of the individual's institutional history and treatment record, the person's criminal background, and any other relevant factor. Subsection (3)(e) provides that within 180 days after receiving notice, there shall be a written assessment and recommendation, which shall be provided to the state attorney and to the Department of Children and Family Services. Following the receipt of the written assessment and recommendation from the multidisciplinary team, the state attorney may file a petition in the circuit court alleging that the person is a sexually violent predator. § 394.914, Fla. Stat. (2004). Section 394.915(1) then provides that upon finding probable cause to believe that an individual is a sexually violent predator, "the judge shall order that the person remain in custody and be immediately transferred to an appropriate secure facility if the person's incarcerative sentence expires." § 394.915(1), Fla. Stat. (2004) (emphasis added).
Similarly, section 394.9135(3), which applies in cases where the individual is in total confinement but subject to immediate release, instructs that upon finding probable cause in a proceeding initiated under that section, "the judge shall order the person be maintained in custody and held in an appropriate secure facility for further proceedings in accordance with this part." § 394.9135(3), Fla. Stat. (2004) (emphasis added). Section 394.9135 is predicated on the underlying premise that the individual is in custody when initial steps are taken in the commitment process, addressing what must happen when "the anticipated release from total confinement of a person who has been convicted of a sexually violent offense becomes immediate for any reason." § 394.9135(1), Fla. Stat. (2004) (emphasis added). This would occur, for example, where the inmate obtains an order for release from an incarcerative sentence.[4] Additionally, this section would *110 apply where an inmate is about to be immediately released from an incarcerative sentence and the detailed procedures of section 394.913 and section 394.915(1)[5] have not yet been followed to initiate commitment proceedings and retain the person in custody.
Section 394.9135(1) provides that where an individual currently in total confinement is about to be released, "the agency with jurisdiction shall upon immediate release from total confinement transfer that person to the custody of the Department of Children and Family Services to be held in an appropriate secure facility." § 394.9135(1), Fla. Stat. (2004). This provision allows the multidisciplinary team seventy-two hours after this transfer to "assess whether the person meets the definition of a sexually violent predator." § 394.9135(2), Fla. Stat. (2004). If the multidisciplinary team determines that the person does not meet the definition of a sexually violent predator, the person is immediately released. If the team determines that the person does meet the definition, "the team shall provide the state attorney ... with its written assessment and recommendation within the 72-hour period or, if the 72-hour period ends on a weekend or holiday, within the next working day thereafter." Id. After that, within forty-eight hours of receipt of the written assessment and recommendation from the team, the state attorney has the option of filing a petition with the circuit court alleging that the person is a sexually violent predator. § 394.9135(3), Fla. Stat. (2004). "If a petition is not filed within 48 hours after receipt of the written assessment and recommendation by the state attorney, the person shall be immediately released." Id. If a petition is timely filed pursuant to this section and the judge determines that there is probable cause, then "the judge shall order the person to be maintained in custody and held in an appropriate secure facility for further proceedings in accordance with this part." § 394.9135(3), Fla. Stat. (2004). These provisions of the Act all demonstrate legislative intent that the individual be in lawful custody when civil commitment proceedings are initiated.
Therefore, as to the question of custody, we conclude that it is clear from a reading of all of the related provisions that the legislative intent of the Jimmy Ryce Act is that the person is in lawful custody *111 at the time any initial steps are taken in the commitment process under either section 394.913 or 394.9135. There are no provisions in the Act that expressly provide or even imply that the State may initiate a civil commitment proceeding after a person has been released from custody and is living in society. We will next consider whether any sections of the Act constitute a statutory waiver of this custody requirement to allow the state to initiate Jimmy Ryce proceedings against an individual who is not in lawful custody.

Jurisdiction Under the Act
Because the First District based its conclusion that custody is not required under the Act on sections 394.913(4) and 394.9135(4), Florida Statutes (2003), a close examination of the text of those and the other provisions of sections 394.913 and 394.9135 is required to determine the legislative intent and legal effect of subsection (4) of each statute in the context of the entire statute. We must endeavor to ascertain the intent of the entirety of both statutes because all parts of a statute must be read together to discern the intent apparent in the whole. See GTC, Inc. v. Edgar, 967 So.2d 781, 787 (Fla.2007). This is in accord with the requirement that we "give full effect to all statutory provisions and construe related statutory provisions in harmony with one another." Heart of Adoptions, 963 So.2d at 199 (quoting Woodham, 829 So.2d at 898). These principles are especially applicable here where the disclaimer subsections expressly refer to the provisions or time limitations contained in the specific statute of which each subsection is a part.
We will first set forth the actual text of each of the subsections relied upon by the district court because "[w]e endeavor to construe statutes to effectuate the intent of the Legislature." Borden v. East-European Ins. Co., 921 So.2d 587, 595 (Fla. 2006). We have said many times that "legislative intent is the polestar" that guides the Court's inquiry and "is determined primarily from the language of the statute." Maggio v. Fla. Dep't of Labor & Employment Sec., 899 So.2d 1074, 1076-77 (Fla.2005). Accordingly, "we begin with the `actual language used in the statute.'" Continental Cas. Co. v. Ryan Inc. Eastern, 974 So.2d 368, 374 (Fla.2008) (quoting Borden, 921 So.2d at 595).
The text of section 394.913(4), Florida Statutes (2004), provides as follows:
(4) The provisions of this section are not jurisdictional, and failure to comply with them in no way prevents the state attorney from proceeding against a person otherwise subject to the provisions of this part.
Section 394.9135(4), Florida Statutes (2004), also relied on by the First District Court of Appeal, states:
(4) The provisions of this section are not jurisdictional, and failure to comply with the time limitations, which results in the release of a person who has been convicted of a sexually violent offense, is not dispositive of the case and does not prevent the state attorney from proceeding against a person otherwise subject to the provisions of this part.
These provisions remain unchanged in the 2008 statutes.
We first turn to section 394.913(4). The language of the "jurisdictional disclaimer" provision in that section does not make any reference to the inmate being out of custody. The subsection refers only to the fact that the "failure to comply" with the "provisions of this part" will not prevent the state attorney from proceeding against a person otherwise subject to the statute. The provisions of the section to which the subsection refers involve notice to the multidisciplinary team, with a copy to the state *112 attorney, of certain details regarding an individual who has been convicted of a sexually violent offense, including deadlines for the notice, specification of information to be contained in the notice, establishment of the multidisciplinary team, deadlines for its written assessment, and other time frames to be met by the state attorney.
The entire statute is predicated on the inmate being in custody, as is evidenced by its very title, which includes the words "Notice to state attorney and multidisciplinary team of release." This is also an appropriate consideration because the title of an act is properly considered in determining legislative intent. See Horowitz v. Plantation Gen. Hosp. Ltd. P'ship, 959 So.2d 176, 182 (Fla.2007). Based on the text of section 394.913(4) and the provisions contained in the larger part to which it refers, we conclude that the provisions of this section for which compliance is waived by subsection (4) deal only with time frames for notice of the inmate's release, the composition, duties and deadlines for the multidisciplinary team, and other specific matters relating to the assessment of the personnot the fact of the release or status of custody.
We now turn to section 394.9135(4). Even though section 394.9135 is replete with references to the individual being in custody, the First District read the provisions of section 394.9135(4) to dispense with all custody requirements in the section. A close reading of the actual text of subsection (4), however, shows that it refers only to "failure to comply with the time limitations, which results in the release of a person who has been convicted of a sexually violent offense." § 394.9135(4), Fla. Stat. (2004) (emphasis added). The time limitations in section 394.9135 all pertain to actions that occur after the inmate has come into the custody of the Department of Children and Family Services directly from his or her incarcerative sentence, to be held in a secure facility by that department. The subsection (4) jurisdictional disclaimer, when given a plain reading in the context of the entire statute, can refer only to the two sections that provide time limitationssubsection (2) (seventy-two hours for the multidisciplinary team to make an assessment) and subsection (3) (forty-eight hours for the state attorney to file the petition).[6] The only time limitation in section 394.9135 that would result in release if not met is *113 the requirement that the state attorney file the petition within forty-eight hours pursuant to subsection (3). If the state attorney fails to file the petition within forty-eight hours after receipt of the written assessment, and the individual is released, subsection (4) would allow the state attorney to file a petition after the release. However, this jurisdictional disclaimer does not come into play until after the individual has been kept in secure custody by the Department of Children and Family Services, after a multidisciplinary team has made an assessment, and after the state attorney has failed to comply with a time limitation applicable to the filing of the petition, where that failure has resulted in the offender's release. The Legislative intent of section 394.9135(4) appears to be a "safety valve" solely to prevent persons from bringing challenges to civil commitment proceedings on technical grounds, such as the giving of late notice of the anticipated release that is mandated by section 394.9135(1)(a) or the late filing by the state attorney. The status of an inmate who has been lawfully released and is no longer in custody, where no steps have been taken in the commitment process, is no mere technical requirement that the Legislature has indicated is waived under subsection (4).
Therefore, based on the actual text of the jurisdictional disclaimer, the legislative intent of section 394.9135(4) is that the state attorney retains the right to file a petition even if the person is released as a result of the state attorney's failure to comply with the forty-eight hour time limitation after the multidisciplinary team has acted. This is also supported by the title of the section: "Immediate releases from total confinement; transfer of person to department; time limitations on assessment, notification, and filing petition to hold in custody; filing petition after release." § 394.9135, Fla. Stat. (2004) (emphases added); see Horowitz, 959 So.2d at 182. Even under the circumstances described in section 394.9135 where the person is released as a result of the state attorney's failure to comply with the time limitations, steps in the commitment proceedings would have already been taken while that person was still in custody, pursuant to sections 394.9135(1) and (2). Thus, the jurisdictional disclaimer contained in section 394.9135(4) should not be extended beyond its actual text to dispense with the custody requirement where no steps in the proceedings have been initiated.
Neither section 394.913(4) nor section 394.9135(4) can be read in isolation. Rather, all parts of each statute should be read together, as we have endeavored to do in this analysis, in order to achieve a consistent whole. GTC, Inc., 967 So.2d at 787. This is in accord with the principle that "[e]very statute must be read as a whole with meaning ascribed to every portion and due regard given to the semantic and contextual interrelationship between its parts." Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992) (quoting Fleischman v. Dep't of Prof'l Reg., 441 So.2d 1121, 1123 (Fla. 3d DCA 1983)). This requires us, as we have done here, to "look not only to the words themselves but also to `the context in which the language lies.'" Horowitz, 959 So.2d at 182 (quoting Miele v. Prudential-Bache Sec., Inc., 656 So.2d 470, 472 (Fla.1995)).
To construe sections 394.913(4) and 394.9135(4) to allow proceedings to be initiated after a person has been released from custody and is living in society, where no part of the process, was begun while the person was in lawful custody, would require us to look only at those discrete subsections in isolation; and under the *114 construction placed on the provisions by the First District, would also render without effect the other, detailed requirements of sections 394.913 and 394.9135. This would violate the "basic rule of statutory construction ... that the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless." Goode, 830 So.2d at 824. We cannot read a statutory subsection in isolation, "but must read it within the context of the entire section in order to ascertain legislative intent for the provision." Contract-Point Fla. Parks, LLC, 986 So.2d at 1265. We conclude that when each statutory section is read in context, as a whole, to give effect to every clause, it is apparent that the jurisdictional disclaimers contained in the two subsections are not intended to and do not waive or dispense with the underlying requirement, otherwise clearly present in the Act, that the individual against whom commitment proceedings are brought must be in lawful custody when steps are taken to commence those proceedings in order for the circuit court to have jurisdiction.

Tanguay v. State
The First District also relied on the decision of Tanguay v. State, 880 So.2d 533 (Fla.2004), in reaching its decision in this case and the State relies on Tanguay here. Therefore, we must conduct a careful examination of that precedent to determine if it controls our decision in this case. For the reasons explained below, we conclude that Tanguay does not determine the question before the Court.
In Tanguay, the individual was actually in custody, although the custody was found to be unlawful. In holding that the circuit court had jurisdiction to adjudicate the commitment petition under the statute in effect at that time, a plurality of this Court in Tanguay stated that there was no "in custody" requirement in the applicable statute, specifically section 916.35(1), Florida Statutes (Supp.1998). 880 So.2d at 537. That section provided: "If the judge determines that there is probable cause to believe that the person is a sexually violent predator, the judge shall direct that the person be taken into custody and held in an appropriate secure facility." § 916.35(1), Fla. Stat. (Supp.1998) (emphasis added). In its holding in Tanguay, the plurality Court specifically pointed out that it was dealing with a version of the Jimmy Ryce Act that existed prior to its amendment in 1999. Tanguay, 880 So.2d at 535. Significantly, the statute in effect in Tanguay spoke in terms of the individual being "taken into custody," a provision that does not appear in the text of the current section 394.915 or 394.9135.
In 1999, the Jimmy Ryce Act was moved to chapter 394 and former section 916.35 was renumbered to section 394.915. See ch. 99-222, § 9, Laws of Fla. Although the title of section 394.915 remained the same, and includes the reference to "respondent taken into custody" as did the title to section 916.35, the text of section 394.915 was amended and no longer refers to the person being "taken into custody." Instead, section 394.915 states:
(1) When the state attorney files a petition seeking to have a person declared a sexually violent predator, the judge shall determine whether probable cause exists to believe that the person named in the petition is a sexually violent predator. If the judge determines that there is probable cause to believe that the person is a sexually violent predator, the judge shall order that the person remain in custody and be immediately transferred to an appropriate secure facility if the person's incarcerative sentence expires.

*115 (2) Upon the expiration of the incarcerative sentence and before the release from custody of a person....
§ 394.915, Fla. Stat. (2004) (emphases added). Moreover, former section 916.35 made no reference to the expiration of the person's incarcerative sentence, as does the amended version of the statute.[7]
Section 394.9135 was also added in 1999, providing procedures to be followed where the anticipated release of an inmate from total confinement becomes immediate for any reasonstatutory procedures which were not applicable to the Court's decision in Tanguay. See ch. 99-222, § 7, Laws of Fla. Since the Legislature added a section providing for special procedures where immediate release is anticipated, and amended section 394.915 to state that the person "remain in custody" rather than be "taken into custody," there is no longer any statutory basis on which to hold that there is no "in custody" requirement in the Jimmy Ryce Act. Accordingly, Tanguay does not control our construction of the 2004 statutes or the jurisdictional disclaimers, first, because section 394.9135 now clearly spells out what is to occur when an inmate is to be immediately released and is expressly premised on the inmate being in custody; second, because section 394.915 has been amended to state that the person for whom probable cause has been found will "remain" in custody; and finally, because Tanguay was a plurality opinion and construed a statute that has now been amended to expressly refer to the person being in custody.
Moreover, it is important to remember that nothing in the Jimmy Ryce Act expressly grants a circuit court jurisdiction over a commitment petition filed against a person not in lawful custody when the proceedings were initiated. We have previously interpreted the term "custody" as used in the Jimmy Ryce Act to mean "lawful custody." See Atkinson, 831 So.2d at 174 (holding that the Jimmy Ryce Act is limited to persons who were in lawful custody on its effective date). As we stated in Atkinson in interpreting the "applicability" provision of the Act, "[a] basic tenet of statutory construction compels a court to interpret a statute so as to avoid a construction that would result in unreasonable, harsh, or absurd consequences" and "[i]t would be contrary to the basic tenets of fairness and due process to interpret provisions of the Act as requiring only actual custody." Id. Similarly, interpreting the Jimmy Ryce Act as not requiring lawful custody for individuals who had been incarcerated at some point after the effective date of the Act but are not in lawful custody when commitment proceedings are initiated would be contrary not only to the overall intent of the Act but "would be contrary to the basic tenets of fairness and due process." Id. Therefore, we will also consider, as we did in Atkinson, whether our interpretation of the Act is in accord with fairness and due process considerations.

*116 Due Process Considerations
In accordance with our precedent, we must read the provisions of the Act consistent with basic tenets of fairness and due process. See Atkinson, 831 So.2d 172, 174. We conclude that our reading of the Act is consistent with due process considerations. The Florida Legislature modeled the Jimmy Ryce Act after Kansas's similar statutory scheme. Goode, 830 So.2d at 821. In Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), the United States Supreme Court held that Kansas's Sexually Violent Predator Act "comports with due process requirements and neither runs afoul of double jeopardy principles nor constitutes an exercise in impermissible ex post facto lawmaking." 521 U.S. at 371, 117 S.Ct. 2072. A plurality of this Court likewise found the Jimmy Ryce Act to be constitutional in Westerheide. 831 So.2d at 112 (plurality opinion); id. at 113 (Quince, J., concurring in result only); id. at 114 (Pariente, J., concurring in part and dissenting in part).
Although we upheld the constitutionality of the Jimmy Ryce Act in Westerheide, we have repeatedly emphasized the importance of procedural safeguards and time constraints within the Act to ensure that an individual's constitutional rights are protected. For example, this Court's plurality opinion in Westerheide noted the "range of procedural safeguards" provided by the Act, including the assistance of counsel and mental health professionals, the right to a jury trial, the right to appeal, at least an annual review of the person's condition, the right to petition for release, and the State's burden of proving by clear and convincing evidence that the person requires commitment. 831 So.2d at 105; see also §§ 394.916(3)-(5), 394.917(1), (3), 394.918, 394.920, Fla. Stat. (2004).
As repeatedly recognized by the United States Supreme Court, "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington v. Texas, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). We explained in Goode, "Civil commitment proceedings involve a serious deprivation of liberty and, thus, such proceedings must comply with the due process clauses of the Florida and United States Constitutions." 830 So.2d at 825-26. We noted in Goode that under the statutory scheme, "the State would have multiple opportunities to initiate and pursue these commitments before the respondent's criminal sentence expires" and "when circumstances cause a legitimate delay but the inmate is scheduled to be released, the statute provides that a person can still be detained pending trial." Id. at 826 & n. 8.
In Mitchell v. State, 911 So.2d 1211 (Fla. 2005), we reiterated a concern we expressed in Goode that while "the Legislature intended that `the review process of potential sexual predators would be concluded while the person was still in prison'... `there is evidence that in practice this is not occurring and that often people are being detained for long periods after their scheduled release date without being taken to trial.'" Mitchell, 911 So.2d at 1219 (quoting Goode, 830 So.2d at 825 & n. 7). We further "emphasize[d] that the State should make every effort to initiate the commitment trial `well in advance of the [detainee's] date of release from prison[, so that] the due process concerns of commitment beyond imprisonment would be substantially alleviated." Mitchell, 911 So.2d at 1219 (quoting Goode, 830 So.2d at 826).
Finally, in Kephart v. Hadi, 932 So.2d 1086 (Fla.2006), we examined the Jimmy Ryce Act's "numerous safeguards to ensure *117 that a prisoner's due process rights are protected." Id. at 1092. We explained, "The confinement of an individual past the expiration of his or her incarcerative sentence requires `scrupulous compliance' with the Act's requirements." Id. at 1093.
Because the Jimmy Ryce Act, by its express terms, is founded upon the concept that the individual be in lawful custody when any portion of the commitment proceedings are initiated, and because of the due process considerations set forth above, we conclude that the Act requires that the individual be in lawful custody when commitment proceedings are initiated.[8]

CONCLUSION
Based on the foregoing analysis conducted in accord with our longstanding principles of statutory construction, we hold that an individual must be in lawful custody when the State takes steps to initiate commitment proceedings pursuant to the Jimmy Ryce Act in order for the circuit court to have jurisdiction to adjudicate the commitment petition. When effect is given to all the provisions of sections 394.913 and 394.9135, we conclude that the Legislature clearly intends that the individual be in lawful custody when steps are taken to initiate civil commitment proceedings under the Act. This is buttressed by the fact that the Legislature amended the Act to provide an expedited procedure where an inmate is to be immediately released. That amendment would not have been necessary if the Legislature did not fully intend for the proceedings to be initiated while the inmate was still in custody. We simply cannot construe each jurisdictional disclaimer subsection in isolation but must consider the entirety of not only each section but of the Act itself. After doing so, we find that the jurisdictional disclaimer provisions do not waive or dispense with the custody requirements of the Act.
Accordingly, we quash the decision of the First District in Larimore and approve the decision of the Second District in Gordon. Because Larimore was not in legal custody when initial steps were taken to initiate civil commitment proceedings against him in this case, the State's commitment petition is hereby dismissed with prejudice and Larimore shall be immediately released from any custody or commitment imposed as a result of the Jimmy Ryce Act proceedings that are the subject of this decision.
It is so ordered.
QUINCE, C.J., and ANSTEAD, and LEWIS, JJ., concur.
WELLS, J., dissents with an opinion.
CANADY and POLSTON, JJ., did not participate.
WELLS, J., dissenting.
I would approve the well-reasoned decision of the First District Court of Appeal in this case, which I conclude correctly applied the statute as intended by the Legislature.
NOTES
[1] "Agency with jurisdiction" is defined in section 394.912(1), Florida Statutes (2004), as follows:

[T]he agency that releases, upon lawful order or authority, a person who is serving a sentence in the custody of the Department of Corrections, a person who was adjudicated delinquent and is committed to the custody of the Department of Juvenile Justice, or a person who was involuntarily committed to the custody of the Department of Children and Family Services upon an adjudication of not guilty by reason of insanity.
§ 394.912(1), Fla. Stat. (2004). This definition of "agency with jurisdiction" presupposes that the person is in custody.
[2] "Total confinement" is defined in section 394.912(11), Florida Statutes (2004), as follows:

[T]he person is currently being held in any physically secure facility being operated or contractually operated for the Department of Corrections, the Department of Juvenile Justice, or the Department of Children and Family Services. A person shall also be deemed to be in total confinement for applicability of provisions under this part if the person is serving an incarcerative sentence under the custody of the Department of Corrections or the Department of Juvenile Justice and is being held in any other secure facility for any reason.
§ 394.912(11), Fla. Stat. (2004).
[3] Section 394.913(1) provides in pertinent part:

Except as provided in s. 394.9135, the written notice [to the multidisciplinary team] must be given: (a) At least 545 days prior to the anticipated release from total confinement of a person serving a sentence in the custody of the Department of Corrections, except that in the case of persons who are totally confined for a period of less than 545 days, written notice must be given as soon as practicable.
§ 394.913(1), Fla. Stat. (2004).
[4] This interpretation is confirmed by Senate staff analyses on chapter 99-222, Laws of Florida, which added section 394.9135. The Florida Senate Committee on Children and Families' staff analysis stated that the section addresses situations where, "because of unforeseen circumstances, it is anticipated that a person's release from total confinement will become immediate. This section ... would assist in dealing with cases such as when inmates successfully challenge gain-time and early release statutes and win early judicially mandated release from prison." Fla. S. Comm. on Child. & Fams., CS for SB 2192 (1999) Staff Analysis 25 (Mar. 30, 1999) [hereinafter Child. & Fams. Comm. SB 2192 Analysis]; see also Fla. S. Comm. on Judiciary, CS for SB 2192 (1999) Staff Analysis 12 (Apr. 8, 1999) (stating that section 394.9135 "provide[s] an expedited involuntary civil commitment process for a person whose release becomes imminent due to factors such as successful gain-time challenges and early release statutes") [hereinafter Judiciary Comm. SB 2192 Analysis]. The section is intended to assist the Department of Children and Families and state attorneys with expediting cases in such circumstances. Child. & Fams. Comm. SB 2192 Analysis at 25; Judiciary Comm. SB 2192 Analysis at 12.
[5] Section 394.915(1) provides:

When the state attorney files a petition seeking to have a person declared a sexually violent predator, the judge shall determine whether probable cause exists to believe that the person named in the petition is a sexually violent predator. If the judge determines that there is probable cause to believe that the person is a sexually violent predator, the judge shall order that the person remain in custody and be immediately transferred to an appropriate secure facility if the person's incarcerative sentence expires.
§ 394.915(1), Fla. Stat. (2004) (emphases added).
[6] The Senate staff analyses support this reading of the section. The Florida Senate Committee on Children and Families' staff analysis explains:

If the state attorney does not file a petition within 48 hours after receipt of the written assessment and recommendation from the team, the person must be immediately released from custody. However, simply because a person is released from custody because the petition was not filed within 48 hours does not mean that it would be dispositive of the case. Rather, the state attorney may still file a petition in the case and follow the procedures set out in the act to involuntarily commit a sexually violent predator. It is anticipated that if the person is released because the state attorney did not file a petition within 48 hours, a person could be taken back into custody and be held in an appropriate secure facility until there is a trial verdict if the judge finds probable cause on a late-filed petition.
Child. & Fams. Comm. SB 2192 Analysis at 25 (emphases added). Similarly, the Florida Senate Committee on Judiciary staff analysis explains:
If the state attorney does not file a petition within 48 hours after receipt of the written assessment and recommendation from the team, the person must be immediately released from custody. However, the state attorney retains the discretion to file a petition at any later time against the person subject to the Act.
Judiciary Comm. SB 2192 Analysis at 12 (emphases added).
[7] In discussing the effect of a jurisdictional disclaimer contained in section 916.33, the predecessor statute to section 394.913(4), the Tanguay Court explained the provision in terms relating only to the failure to meet certain specified time deadlines:

The Legislature expressly provided that the requirements of section 916.33 are not jurisdictional and that failure to comply with these requirements would not prevent the State from proceeding under the Act. Id. § 916.33(1). Therefore, if the State fails to strictly adhere to the provisions of this section (i.e., if the State does not provide the multidisciplinary team with notice precisely within 180 or ninety days, or if the multidisciplinary team fails to provide its recommendation within forty-five days), the State may still proceed against the person.
Tanguay, 880 So.2d at 536 (emphasis added).
[8] In this case Larimore's entire resentencing was unlawful. Thus, we do not reach the question of whether section 394.9135, Florida Statutes, would allow the State to take steps to initiate a commitment proceeding against a person who while in lawful custody an order for immediate release for any reason. That issue is not before us.