PADOVANO, J.,
concurring.
I concur in all respects with the decision by the majority but wish to emphasize that the decision was based on the narrow ground of invited error and that it does not call into question the validity of our prior decision in Taylor v. State, 65 So.3d 531 (Fla. 1st DCA 2011). Some of the judges of this court believe that the Taylor case is controlling here and they have expressed the view that the court should recede from it. I write to express my disagreement on both of these points.
This court held in Taylor that a dismissal without prejudice for failure to meet the mandatory time limit for conducting a trial on a petition for involuntary commitment cannot be cured as a matter of course by filing an amended petition after the time has expired. In this context, the term “without prejudice” could only signify that the state is free to initiate a commitment proceeding in the future if the respondent is in lawful custody once again. In other words, the dismissal does not operate as res judicata on any element of proof necessary to support an involuntary commitment. To interpret the phrase “without prejudice” to mean that the state may restart the time period simply by refiling the petition would effectively nullify the mandatory time limit in the statute.
The majority correctly declined to revisit the Taylor decision, inasmuch as the precedent set by the court in that case has no bearing on the issue in this case. The prosecutor and the judge in the present ease were both prepared to afford Mr. Anderson a trial within the time period set by the statute. The delay in the trial was caused entirely by Mr. Anderson’s own request for additional time to obtain another psychological evaluation. He understood that the trial judge could not grant his request for additional time without also setting the trial date beyond the statutory time limit. Because Mr. Anderson essentially asked the court for a continuance, he is in no position to complain about the delay in the trial.
In contrast, the delay in the Taylor case was caused by years of neglect and, in the end, a motion for a continuance filed by the state. Mr. Taylor did not waive his right to a speedy trial in writing and, unlike Mr. Anderson, he did not waive his right to a speedy trial in open court by requesting additional time.[4] This significant difference between the present case and the Taylor case did not become apparent to this court until after the court voted to hear the present case en banc. It became known only because the en banc court requested the transcript of a hearing not previously provided by the parties. The supplemental record plainly revealed that it was Mr. Anderson who had requested the delay in the trial.
Those of my colleagues who wish to recede from Taylor now minimize this major difference between the two cases by pointing out that the respondents were entitled to be released in both cases because the motions to dismiss were granted in both cases. The fallacy in this argument is that the motion to dismiss in Tay *1208 lor was properly granted whereas the motion in this case should have been denied.
Mr. Taylor was held in custody on the strength of an automatic stay the state had obtained by filing an appeal from the order dismissing the petition. He moved to vacate the stay in the trial court on the ground that the state had no reasonable likelihood of success on appeal. The trial judge denied the motion but this court never had an opportunity to review the stay, because the state did not transmit a copy of the notice of appeal to this court or otherwise inform this court that it had filed an appeal. Instead, the state filed an “amended” petition that was identical in all respects to the original and then voluntarily dismissed the appeal. In these circumstances, it would be very difficult to make a plausible argument that Mr. Taylor was in lawful custody during the brief period of time in which the state’s appeal was pending.
That Mr. Taylor was entitled to a dismissal was never in question. He had been held in custody for more than ten years and he had never waived his right to a speedy trial. The case against Mr. Anderson is very different in that he was not entitled to a dismissal. This court has now held in its en banc decision that Mr. Anderson waived his right to rely on the time limitation in the statute. If the trial court had denied the motion, as it should have, Mr. Anderson would have been in lawful custody under the original petition. Thus, the decision this court made in Taylor is not controlling here for the simple reason that Mr. Anderson waived his right to a trial within the time limit in the statute, whereas Mr. Taylor did not.
If the Taylor decision were applicable here, I certainly would not recede from it, as Judge Rowe and other judges who have joined her opinion are advocating. In my view, the conclusion the court reached in Taylor is correct. Moreover, I believe that the alternative interpretation set out in Judge Rowe’s opinion would expose the involuntary commitment statute to a viable constitutional challenge.
It appears to me now, as it did then, that the conclusion the court reached in Taylor is one that is required by the plain language of the statute. Section 394.916(1), Florida Statutes (2009), states, “Within 30 days after the determination of probable cause, the court shall conduct a trial to determine whether the person is a sexually violent predator.” (Emphasis added.) This statute is not ambiguous; it sets a mandatory time limit for conducting a trial. The time period in the statute is measured from the date of the order finding probable cause, not from the date of the petition. I do not believe that the state should be permitted to restart the running of the time by filing an amended petition in the same case and obtaining a new order finding probable cause. There is nothing in the text of the statute to suggest that the mandatory time limit can be extended or circumvented in this way.
Rule 4.240(a) of the Florida Rules of Civil Procedure for Involuntary Commitment of Sexually Violent Predators also sets a mandatory time limit for conducting a trial. This rule states that “[t]he trial to determine if the respondent is a sexually violent predator shall be commenced within 30 days after the summons has been returned served and filed with the clerk of the court, unless the respondent waives the 30 day time period in writing.” The Fourth District Court of Appeal held in Tedesco v. State, 62 So.3d 1252 (Fla. 4th DCA 2011) that the rule takes precedence over the statute, but this has no effect on the present disagreement within our court.
The significant point is that the time limit was designed to apply to the entire proceeding. I do not read the statute or *1209 the rule to mean that the time limit applies to a particular petition for commitment or, as in this case, a particular version of the same petition. The statute does not state that the time periods can be applied sequentially to individual petitions, beginning once with a given petition and then starting anew with another. Nor is there anything in the statute or the rule to suggest that the time periods can be revived once they have expired.
Judge Rowe concludes that the state has a right to proceed after the deadline, so long as the respondent is released from custody. This conclusion effectively replaces the strict requirement in the text of the statute with a more lenient rule made entirely by the court. Section 894.916(1) states that the “court shall conduct a trial” within 30 days of the order determining probable cause. The statute sets a maximum time for conducting a trial, not a maximum time to hold the respondent in custody. To conclude that the statute merely governs the issue of custody not only reads something into the text that is not there, it would also create a host of new problems for the court to resolve. Would there be any time constraint on the state’s ability to revive a case by filing a new or amended petition and, if so, what would it be? How many times can the state revive the case by filing new or amended petitions?
It is no answer to say that section 95.11(p) provides a four-year statute of limitations for civil actions not governed by a more specific statute. It is doubtful that the statute of limitations can be applied at all in a Jimmy Ryce Act proceeding, as there is no point at which the action can be said to have accrued. But there is a more serious problem with the argument that section 95.11(p) provides an outer time limit. Section 894.916(1) sets a time limit to conduct a trial, not to initiate the case. In that respect, it functions more like the speedy trial rule in criminal cases than a statute of limitations. If the state violates a criminal defendant’s right to a speedy trial, it cannot proceed with the trial, despite the violation, merely because there is still time left on the statute of limitations. By the same reasoning, the state should not be entitled to proceed to a commitment trial in a Jimmy Ryce Act case after the mandatory time limit for conducting the trial has expired, merely because there is time left on a general statute of limitations that would otherwise apply to unspecified civil actions.
The notion that release is the sole consequence of a failure to meet the deadline for trial is also unsupported by the rules of procedure. Rule 4.240(a) states that the “trial shall be commenced” within 30 days of the service of the summons. It does not state that the defendant shall be released from custody if the state fails to meet the deadline for trial but that the state is otherwise free to proceed. Whether this would be a good policy is a question for either the Florida Supreme Court or the Florida Legislature to decide.
I acknowledge that there may be some circumstances in which the state could continue with a Jimmy Ryce Act proceeding after the respondent has been released. However, it does not follow from this proposition that the state is entitled to continue with an untimely Ryce Act proceeding merely because the respondent has been released. Certainly, the state is not entitled as a matter of right to proceed in the face of its own failure to meet the mandatory time limits. To the contrary, there must be some extraordinary circumstance that would justify the continuation of a prosecution after the statutory time limit for trial has expired.
The procedure Judge Rowe proposes would entitle the state to proceed as a *1210 matter of course after the running of the time limit, provided the respondent is released from custody. In effect, the rule she advocates would create a new class of Ryce Act respondents: those who are alleged to be extremely dangerous and yet are allowed to remain at large in society while the state is pursuing a commitment proceeding. I doubt that this was the intent of the legislature. A procedure that substitutes the release of the respondent for a prompt trial and final resolution of the case would be contrary to the main objective of the statute.
The purpose of the Jimmy Ryce Act is to isolate and treat persons who are presently dangerous. As explained in section 394.910, Florida Statutes, the Ryce Act is aimed at “a small but extremely dangerous number of sexually violent predators.” The point of the Act is to detain these predators in order to protect society. It would make little sense to release them pending trial, as we would a criminal defendant who is eligible for pretrial release. The trial of a Ryce Act petition takes place much faster than the trial in a criminal case.[5] If the charge is proven, the respondent is committed at that time. If the charge is not proven, the respondent is released at that time. However, the respondent is not released pending the outcome, because the very danger the court is trying to prevent could occur in the meantime.
Our decision in Taylor is compelled not only by the plain language of the statute but also by judicial precedents we are bound to follow. The Florida Supreme Court held in Osborne v. State, 907 So.2d 505 (Fla.2005) that if the respondent is not brought to trial within thirty days of the probable cause hearing, as required by law, the petition for involuntary commitment must be dismissed, and the respondent must be released from custody. Subsequently, in Larimore v. State, 2 So.3d 101 (Fla.2008), the Florida Supreme Court held that the respondent must be in lawful custody when the process of involuntary commitment is initiated.
If we consider the precedents set by the court in Osborne and Larimore together, we must conclude that the state has no authority to file a new or amended petition in the same proceeding once the original petition has been dismissed for failure to meet the statutoiy deadline for conducting a trial. The respondent would be released from custody as required by Osborne, and the state would be unable to initiate a proceeding against him under Larimore, because he would no longer be in custody. The only way to avoid this result would be to conclude that the custody requirement in Larimore applies only when the case is originally processed and filed. That is not a viable option, however, as it would require the court to treat a subsequent dismissal for failure to meet the deadline as if it were irrelevant.
The supreme court did not explain precisely what it meant by a dismissal “without prejudice” in the context of a Jimmy Ryce Act proceeding, but it is clear from the language of the pertinent opinions that the court meant that the dismissal was without prejudice to file a new commitment petition at some point in the future. The court stated in Osborne, “[Wjhere a respondent has completed his criminal sentence and is being detained awaiting a Ryce Act trial and the trial period has exceeded thirty days without a continuance *1211 for good cause, the respondent’s remedy is release from detention and a dismissal without prejudice of the pending proceedings.” 907 So.2d at 509 (emphasis added). The court is plainly referring to the entire proceeding, not merely the petition for involuntary commitment. The court is stating that another case can be filed at some point, not that the state can revive the existing case by filing a new petition.
The Second District has also concluded that the effect of a dismissal without prejudice is to enable the state to file another case at a later point in time. As the court explained in In re Commitment of Goode, 22 So.3d 750, 752 (Fla. 2d DCA 2009),
Where the State fails to bring a detainee to trial within the thirty-day period, the petition for civil commitment must be dismissed and the detainee must be released. However, unlike the running of a statute of limitations, the expiration of the thirty-day period does not forever foreclose the State from filing a new petition for civil commitment. Rather, it acts as a procedural bar to the continued detention of the detainee at that time. If the detainee is subsequently imprisoned for another offense, the State is free to file a new petition.
The Second District assumed that the phrase “without prejudice” signifies that the dismissal does not operate as res judi-cata. A failure to meet the mandatory time limit cannot be corrected by filing a new or amended petition in the pending case. However, as the court explained, the state is free to file a “new petition for civil commitment” if “the detainee is subsequently imprisoned for another offense.”
This interpretation is consistent with the procedures that apply in civil cases in comparable situations. The court may properly look to the Florida Rules of Civil Procedure for guidance on this issue, because the civil rules are incorporated by reference into both the Ryce Act and the rules governing Ryce Act proceedings. See § 394.9155(1), Fla. Stat.; Fla. R. Civ. P.— S.V.P., 4.440(a)(1). The civil rules apply in Ryce Act proceedings to the extent that they are not in conflict with more specific rules or statutes.
When a case is dismissed without prejudice for failure to meet a time limit in the civil rules, the phrase “without prejudice” means that the plaintiff can assert the claim once again in another case. It does not mean the plaintiff can file a new complaint in the same case. For example, a dismissal without prejudice for failure to make service of process within 120 days means that the plaintiff may start over with a new lawsuit. See Carlton v. Wal-Mart Stores, Inc., 621 So.2d 451 (Fla. 1st DCA 1993). The plaintiff cannot cure the problem simply by filing an amended complaint in the same lawsuit. Likewise, a dismissal without prejudice for failure to prosecute within one year means that the plaintiff has a right to initiate the action once again. See Houswerth v. Neimiec, 603 So.2d 88 (Fla. 5th DCA 1992). It does not mean that the plaintiff may proceed in the same action as if the time had not run.
We must be careful not to confuse the dismissal without prejudice that occurs when the plaintiff fails to meet one of these time limits with the dismissal without prejudice that occurs when a complaint is dismissed on the ground that it fails to state a cause of action. That is a dismissal of the complaint, not a dismissal of the case. Both are referred to as dismissals without prejudice but they are very different. A failure to meet a mandatory time limit cannot be cured simply by filing an “amended” complaint in the same case. Yet that is precisely what the state attempted to do in the Taylor case.
Judge Rowe points out that a dismissal for failure to meet the mandatory time *1212 limit for conducting a trial is not jurisdictional. However, the fact that the court has judicial power to continue with a case does not mean that the court should continue with the case. And the fact that the court has jurisdiction certainly does not mean that the state is entitled to proceed with the case, notwithstanding its failure to meet the mandatory time limit. The supreme court concluded that trial courts retain jurisdiction following a dismissal, to account for the possibility that there may be some exceptional circumstances that justify continued prosecution beyond the time limit for conducting a trial. The court explained in State v. Goode, 830 So.2d 817, 828 (Fla.2002) that it did not regard the time limit as a jurisdictional bar, because there may be “limited instances where the court would retain jurisdiction beyond the thirty-day time period, most notably where a continuance, for good cause or in the interest of justice, has been granted under section 394.916(2).”[6]
Finally, our interpretation of the statute in Taylor was necessary in order to avoid future challenges to the constitutionality of the Jimmy Ryce Act. Whether the involuntary civil confinement of a person alleged to be dangerous violates an individual’s substantive right of due process is a close question. In the leading case of Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), the United States Supreme Court upheld the Kansas Sexually Violent Predator statute by a vote of five to four. The majority held that the statute did not violate substantive due process rights because it was not punitive and because it contained a number of procedural safeguards. Justice Breyer dissented. He reasoned that the Kansas commitment statute was not designed to facilitate a civil commitment, but rather that it simply enabled the state to “inflict further punishment” on the respondent. Hendricks, 521 U.S. at 373, 117 S.Ct. 2072 (Breyer, J., dissenting). Three other justices joined in Justice Breyer’s dissent.
Justice Kennedy joined the majority but wrote a separate concurring opinion in which he emphasized that the constitutionality of the statute depends on the way in which it is employed by the state. Justice Kennedy’s concurring opinion contains the following warning to those who would misuse the commitment statutes:
On the record before us, the Kansas civil statute conforms to our precedents. If, however, civil confinement were to become a mechanism for retribution or general deterrence, or if it were shown that mental abnormality is too imprecise a category to offer a solid basis for concluding that civil detention is justified, our precedents would not suffice to validate it.
Hendricks at 373, 117 S.Ct. 2072 (Kennedy, J., concurring). It is clear from this statement and the series of other opinions in the case that the United States Supreme Court would not invariably uphold an involuntary commitment statute. Whether a particular statute is constitutionally valid depends in large measure on the safeguards in the statute and on the way in which the statute is enforced by the state.
Florida’s sexually violent predator statute is similar in many respects to the Kansas statute approved by the Court in Hendricks. The Florida Supreme Court upheld our state’s statute in Westerheide v. State, 831 So.2d 93 (Fla.2002) and, in so doing, it relied heavily on the analysis in *1213 Hendricks. Our supreme court held that the statute satisfies the requirements of substantive due process but emphasized that its decision was based in part on the procedural safeguards in the statute. Since then, the court has consistently explained that the procedural safeguards in the Jimmy Ryce Act are essential to the validity of the involuntary commitment process. See Larimore, 2 So.3d at 107 (noting that, in Westerheide, the court had “specifically relied on the ‘range of procedural safeguards to the individuals’ ” in upholding the Jimmy Ryce Act); Kephart v. Hadi, 932 So.2d 1086, 1093 (Fla.2006) (stating that “confinement under the Act did not violate an individual’s right to due process, ‘provided that the confinement takes place pursuant to proper procedure and evidentiary standards’ ”).
The mandatory time limit for bringing the respondent to trial is one of the essential procedural safeguards in the statute. It ensures that the determination leading to either involuntary confinement or release will be made expeditiously. If the courts allow the right created by this statute to become illusory, the entire process will be exposed to a serious constitutional challenge. The fear Justice Kennedy expressed in Hendricks that a statute, constitutionally valid on its face, might become unconstitutional by the manner in which it is employed, will have been realized.
For these reasons, I believe that our prior decision in Taylor is not controlling here. If it were controlling, I would not recede from it.

. Judge Wetherell states in his concurring opinion that Mr. Taylor "agreed to an indefinite waiver of the statutory trial period for strategic reasons,” but that is not correct. The state’s response in the Taylor case states that the lawyers had an informal off-the-record agreement for a brief delay of no more than 30 days. The petitioner’s lawyer acknowledges that such an agreement may have been made, but if that is the case, the agreement is not a matter of record. Mr. Taylor did not waive the time period in writing or in open court. Nor is there any evidence that he was even aware of the informal agreement to which the prosecutor is referring.

. Rule 3.191(a) of the Florida Rules of Criminal Procedure provides that the defendant shall be brought to trial on a felony charge within 175 days of the arrest. In contrast, a person facing involuntary commitment under the Ryce Act must be brought to trial within 30 days.

. In Goode, the supreme court affirmed the dismissal of the petition, and the respondent was released. The state did not attempt to file a new or amended petition in that case following the expiration of the time limit.