QUINCE, J.
This case is before the Court for review of the decision of the Second District Court of Appeal in In re Commitment of Larry Phillips, 69 So.3d 951 (Fla. 2d DCA 2010). In its decision the district court ruled upon the following question, which the court has certified to be of great public importance:
DOES THE STATE HAVE JURISDICTION TO INITIATE CIVIL COMMITMENT PROCEEDINGS UNDER THE INVOLUNTARY CIVIL COMMITMENT OF SEXUALLY VIOLENT PREDATORS ACT AGAINST AN INMATE WHO IS ENTITLED TO IMMEDIATE RELEASE BASED ON A CORRECTED AWARD OF GAIN TIME?
Id. at 956. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We hold that because Phillips’ sentence had expired at the time the State initiated commitment proceedings under the Jimmy Ryce Act, Phillips was not in lawful custody, and consequently, the circuit court lacked jurisdiction over the commitment petition. Accordingly, we answer the certified question in the negative, and approve the Second District’s decision rendered below.
FACTS
The following facts, which are not in dispute, come from the Second District Court of Appeal’s opinion below:
In Febraary 1990 Phillips was arrested on a fugitive warrant in Georgia and extradited to Collier County where he was charged with three counts of committing a lewd and lascivious assault. After posting bond in Florida, Phillips was returned to Georgia for prosecution of a separate offense. In July 1990 a Georgia court sentenced Phillips to three years in prison followed by seventeen years of probation for that offense. *1235 Phillips was paroled in March 1992 and returned to Florida to resolve the Collier County case.
In April 1992 the Collier County circuit court sentenced Phillips to two years in prison followed by ten years of probation. The court awarded Phillips two years of credit for the time he had served in Georgia prior to his return to Florida. This effectively erased the two-year prison sentence, and Phillips was processed in and out of the Florida Department of Corrections (DOC) on the same day that he was sentenced. Phillips thereafter returned to Georgia to serve both his Georgia and Florida probationary terms.
Less than two years later, Phillips violated both his Georgia probation and his Florida probation by committing a new law offense [aggravated child molestation] in Georgia. A Georgia court revoked his probation and sentenced him to prison. In January 2004 Phillips was paroled from prison in Georgia and extradited to Florida to face the violation of probation charge in Collier County. [On June 10, 2004,] Phillips admitted to violating his Florida probation, and the court sentenced him to 5.5 years in prison with 177 days of jail credit [for the time Phillips spent in custody prior to the revocation of his probation]. [On April 6, 2005,] Phillips filed a [pro se Motion to Correct Sentence to Reflect Prison Time Credit] pursuant to Florida Rule of Criminal Procedure 3.800(a). Phillips requested that a Florida post-conviction court award him credit against his prison sentence for the two years of credit for time served in Georgia that the Florida court had awarded [on his original sentence] in 1992.[0]n September [30,] 2005 the postconviction court granted the motion and ordered the DOC to award Phillips the original jail and prison credit in addition to the credit for the 177 days.... [1]
On December 6, 2005, Phillips was released from the DOC and was transferred to the Florida Civil Commitment Center pursuant to section 394.9135(1), Florida Statutes (2005). The Department of Children and Family Services placed a seventy-two hour hold on Phillips and began its evaluation to determine whether he met the criteria for commitment as a sexually violent predator under the Act. [On December 12, 2005,] [t]he multidisciplinary team timely recommended civil commitment to the state attorney, who [then] filed a commitment petition [the same day].
In June 2009 Phillips, who was still in custody but had not been to trial, filed a motion to dismiss the commitment petition in the circuit- court [based on Larimore v. State, 2 So.3d 101 (Fla.2008), which held that an individual must be in lawful custody when commitment proceedings are initiated in order for the circuit court to have jurisdiction to adjudicate the commitment petition filed pursuant to the Jimmy Ryce Act]. Phillips argued that he was not in lawful custody at the time commitment proceedings were initiated on December 6, 2005, because his sentence had expired on August 31, 2005, based on the post-conviction court’s determination of entitlement to two years of prison credit against Phillips’ sentence of 5.5 years. Phillips relied on an affidavit executed *1236 by a DOC administrator which stated that, with the application of the prior prison and jail credit, Phillips’ sentence expired on August 31, 2005. The DOC included the award of 420 days of basic gain time and 234 days of incentive gain time in making this calculation.
[On November 16, 2009,] [t]he circuit court denied the motion to dismiss based on its determination that Phillips was in lawful custody when commitment proceedings were initiated because “[t]he time period from August 31, 2005 to December 6, 2005 was well within the legal term of [Phillips’] sentence of 5 1/2 years.”
In re Commitment of Larry Phillips, 69 So.3d 951, 952-53 (Fla. 2d DCA 2010) (footnotes omitted). The circuit court noted that absent gain-time, “[Phillips] would not have been released until approximately 1 1/2 years after the August 31, 2005 recalculated release date.”
On January 19, 2010, Phillips filed a petition for writ of prohibition with the Second District Court of Appeal, contending that because his sentence legally expired on August 31, 2005, he was not in lawful custody when commitment proceedings were initiated in December 2005. Id. at 953. The district court found that the sentence of five and one-half years for the violation of his probation was illegal because the court failed to award prior jail and prison credit. Id. at 955. Applying Lanmore, the Second District held:
Phillips cannot be committed pursuant to the Act if he was not in lawful custody when the State initiated commitment proceedings.... After the postconviction court determined that the prior prison and jail credits should be applied to correct the illegal sentence, the DOC recalculated Phillips’ sentence and found that it had expired as of August 31, 2005. Thus, Phillips was not in lawful custody when the State initiated commitment proceedings in December 2005.
[[Image here]]
Because Phillips was not in lawful custody at the time that proceedings under the Act were commenced, the circuit court does not have jurisdiction to adjudicate the commitment petition filed against Phillips under the Act.
Id. at 954-56. Accordingly, the Second District granted Phillips’ petition for writ of prohibition, dismissed the State’s commitment petition with prejudice, and ordered the immediate release of Phillips from any custody attributable to the State’s initiation of commitment proceedings under the Act. Id. at 956.
On March 8, 2011, we accepted jurisdiction of this case. On March 22, 2011, the Second District granted the State’s motion to stay issuance of the mandate. On October 10, 2011, after oral argument was held, we issued an order approving the Second District’s decision below, lifted the stay, and ordered Phillips’ immediate release from the custody of the Department of Children and Family Services (DCF). We now explain the reasoning behind our decision to approve the district court’s decision below.
ANALYSIS
The specific issue we are to decide is whether an inmate is in lawful custody at the time the State commences commitment proceedings pursuant to section 394.9135(1), Florida Statutes (2005), of the Involuntary Civil Commitment of Sexually Violent Predators Act, commonly known as the “Jimmy Ryce Act” (the Act), when the inmate’s sentence has actually expired due to postconviction credit for time previously served and/or an award of gain-time. The standard of review for the pure question of law before us is de novo. D’Angelo v. Fitzmaurice, 863 So.2d 311, 314 (Fla.2003). *1237 Before deciding this issue, we first note the pertinent provisions of the Act and review our case law which has interpreted the Act to require lawful custody. We conclude by commenting on the due process rights of individuals who are detained pursuant to the Act.
The Jimmy Ryce Act
The Involuntary Civil Commitment of Sexually Violent Predators Act, sections 916.31-49, Florida Statutes (1999), became effective on January 1, 1999. See ch. 98-64, § 24, at 455, Laws of Fla. Effective May 26, 1999, the Act was superseded, amended and renumbered to sections 394.910-.932, Florida Statutes (1999). See ch. 99-222, § 1, at 961, § 29, at 972, Laws of Fla. The Act “create[d] a civil commitment procedure for the long-term care and treatment of sexually violent predators.”[2] § 394.910, Fla. Stat. (1999). A sexually violent predator is any person who “[h]as been convicted of a sexually violent offense; and [sjuffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.” § 394.912(10)(a), (b), Fla. Stat. (2005). The authority given to the State so that it may initiate commitment proceedings under the Act is found in section 394.913 (involving the furnishing of written notice to the multidisciplinary team and state attorney at least 545 days prior to the anticipated release from total confinement if the individual is serving a sentence in the Department of Corrections (DOC)), and section 394.9135 (involving the transfer of the individual to the custody of DCF if the anticipated release from total confinement becomes immediate for any reason).[3]
Lawful Custody Requirement
The Act “applies to all persons currently in custody who have been convicted of a sexually violent offense, as that term is defined in s. 394.912(9), as well as to all persons convicted of a sexually violent offense and sentenced to total confinement in the future.” § 394.925, Fla. Stat. (2005) (emphasis added). Thus, the Legislature expressly used the term “custody” and not “lawful custody” in the applicability provision.[4] The Act’s definitional section does not define custody, although it does broadly define “total confinement” to mean
*1238 that the person is currently being held in any physically secure facility being operated or contractually operated for the [DOC], the Department of Juvenile Justice, or the [DCF], A person shall also be deemed to be in total confinement for applicability of provisions under this part if the person is serving an incarcerative sentence under the custody of the Department of Corrections or the Department of Juvenile Justice and is being held in any other secure facility for any reason.
§ 894.912(11), Fla. Stat. (2005).[5]
We have interpreted “custody” under the Act to mean that the Act applies to only individuals in “lawful custody,” not merely those individuals in actual custody. See Larimore, 2 So.3d at 110-11; State v. Atkinson, 831 So.2d 172, 173-74 (Fla.2002). In September 1996, Atkinson was sentenced to five years in prison for the conviction of a qualifying offense under the Act. Atkinson, 831 So.2d at 173. Subsequent to the Act’s effective date — January 1, 1999—Atkinson requested a resentenc-ing pursuant to Heggs v. State, 759 So.2d 620 (Fla.2000).[6] Atkinson, 831 So.2d at 173. In May 2000, the trial court resen-tenced Atkinson to twenty-one months in prison effective, nunc pro tunc, on the date of the original sentence. Id. The effect of the resentence was that Atkinson’s prison term would have expired, even absent gain-time, on June 25, 1998, and thus, pri- or to the effective date of the Act. Id. In June 2000, the State filed a petition to have Atkinson committed under the Act. Id.
Atkinson thereafter filed a petition for writ of prohibition with the Second District Court of Appeal, contending that the Act did not apply to him because he was not in lawful custody on the Act’s effective date. Id. The Second District found that the use of “custody” in the applicability provision meant “lawful custody.” Id. To require only actual custody, regardless of its lawfulness would produce unreasonable, harsh, or absurd consequences, and thus, contrary to public policy, the district court reasoned. Id. at 173-74. The Second District granted Atkinson’s petition for writ of prohibition because the circuit court was without jurisdiction over the commitment petition. Id. at 173. We agreed with the district court’s decision in Atkinson, finding that “[i]t would be contrary to the basic tenets of fairness and due process if we were to interpret [the applicability provision] as requiring only actual custody.” Id. at 174. Accordingly, we held that the Act was limited to persons who were in lawful custody on its effective date. Id.
After Atkinson but before Larimore, we issued our opinion in Tanguay v. State, 880 So.2d 533 (Fla.2004). In Tanguay, the individual was committed to the custody of the Department of Juvenile Justice. Id. at 535. His sentence expired in February 1999, but he was detained for an additional sixteen days after the expiration date in *1239 order for the State to initiate commitment proceedings under the Act. Id. After the commitment petition was filed in March 1999, Tanguay moved to dismiss the petition by claiming that the circuit court lacked jurisdiction since he was unlawfully detained beyond the expiration of his sentence. Id. The circuit court denied Tan-guay’s motion, and as a result, Tanguay filed a petition for writ of prohibition in the Second District. Id. at 585-86. The district court held that Tanguay’s due process rights were violated by detaining him beyond the expiration of his sentence but such did not warrant the dismissal of the petition because Tanguay failed to allege he was prejudiced by the unlawful confinement. Id. at 536.
In reviewing the district court’s opinion in Tanguay, a plurality of this Court stated that, “There was no ‘in custody1 requirement in the statute conferring jurisdiction in the circuit court which conditioned jurisdiction on the petitioner being ‘in custody1 on the date the petition was filed.” Id. at 537. As support, the plurality Court quoted section 916.35(1), Florida Statutes (Supp.1998), which provided that, “If the judge determines that there is probable cause to believe that the person is a sexually violent predator, the judge shall direct that the person be taken into custody and held in an appropriate secure facility.” Id. (emphasis added). The plurality Court approved the circuit court’s denial of Tanguay’s motion to dismiss, stating “that the fact that the petitioner was not in lawful custody when the commitment petition was filed [did] not divest the circuit court of jurisdiction to adjudicate the petition.” Id.[7]
In 2008, this Court in Larimore reaffirmed the Atkinson Court’s interpretation that the applicability section of the Act was to be read to require lawful custody. 2 So.3d at 103. After pleading guilty to Act-qualifying offenses in two separate cases, Larimore was sentenced in 1991 to prison for a term of fifteen years in one case to be followed by probation for a term of five years in the other case. Id. at 104. With gain-time awarded, Larimore was released from prison in October 1998, and began serving his probationary term. Id. In February 2000, after violating his probation, the court revoked his probation and sentenced Larimore to five years in prison. Id. In August 2002, the First District held that Larimore was entitled to Tripp[8] credit for the fifteen years served on his original prison sentence — which included prison time served as well as gain-time awarded — effectively erasing his five-year revocation of probation term. Id. The DOC thereafter forfeited 2,830 days of gain-time which Larimore had earned on his original prison sentence. Id. In November 2004, the State filed a commitment petition against Larimore pursuant to the Act. Id. The following month, the First District held that Larimore was entitled to an immediate release because the forfeiture of gain-time was not authorized. Id. Lari-more moved to dismiss the commitment petition, claiming that he was not in lawful custody on the effective date of the Act. Id. After the circuit court denied the motion, *1240 Larimore then filed a petition for writ of prohibition with the First District. Id.
The district court found that Larimore was not in lawful custody when the state filed its commitment petition in November 2004. Id. at 104-05. However, the district court concluded that the circuit court had jurisdiction over the commitment petition because “jurisdiction under the amended Act is not conditioned on a person being ‘in custody’ on the date the petition is filed.” Id. at 104. Accordingly, the First District denied Larimore’s petition for writ of prohibition, and certified conflict with the Second District’s decision in Gordon v. Regier, 839 So.2d 715 (Fla. 2d DCA 2003).[9] Larimore, 2 So.3d at 104-05.
In Larimore, we clearly held that lawful custody is required whether the State is initiating commitment proceedings pursuant to section 394.913 or 394.9135 of the Act:
[A]s to the question of custody, we conclude that it is clear from a reading of all of the related provisions that the legislative intent of the Jimmy Ryce Act is that the person is in lawful custody at the time any initial steps are taken in the commitment process under either section 391.913 or 391.9135.
[[Image here]]
Because the Jimmy Ryce Act, by its express terms, is founded upon the concept that the individual be in lawful custody when any portion of the commitment proceedings [is] initiated, and because of the due process considerations ... we conclude that the Act requires that the individual be in lawful custody when commitment proceedings are initiated.
Id. at 110-11,117 (emphasis added). Lawful custody is required “in order for the circuit court to have jurisdiction to adjudicate the commitment petition.” Id. at 117. We explained that if the judge finds that there is probable cause to believe an individual is a sexually violent predator pursuant to section 394.9135, then “the judge shall order the person be maintained in custody and held in an appropriate secure facility for further proceedings in accordance with this part.” Id. at 109. Therefore, “[s]ection 394.9135 is predicated on the underlying premise that the individual is in custody when initial steps are taken in the commitment process, addressing what must happen when ‘the anticipated release from total confinement of a person who has been convicted of a sexually violent offense becomes immediate for any reason.’ ” Id. (quoting § 394.9135(1), Fla. Stat. (2004)). In addition, we found that the jurisdictional disclaimer provision in section 394.9135(4) “should not be extended beyond its actual text to dispense with the custody requirement where no steps in the proceedings have been initiated.” Id. at 113.
We also determined that the plurality Court’s decision in Tanguay — which held that the circuit court was not divested of jurisdiction to adjudicate the commitment petition even though the individual was not in lawful custody when the petition was filed — did not control our construction of the Act. Id. at 114. We explained that the language “taken into custody” under section 916.35(1), the statute in effect in Tanguay, did not appear in the current version of sections 394.915 or 394.9135. Id. Instead, if the judge finds that probable cause exists, under section 394.915, the judge shall order that the individual “re *1241 main in custody.” [10] Id. With “remain in custody” replacing “taken into custody” coupled with the Legislature’s enactment of section 394.9135, “providing for special procedures where immediate release is anticipated,” we held that “there is no longer any statutory basis on which to hold that there is no ‘in custody’ requirement in the Jimmy Ryce Act.” Id. at 115. Accordingly, we ordered the dismissal of the State’s commitment petition with prejudice “[b]e-cause Larimore was not in legal custody when initial steps were taken to initiate civil commitment proceedings against him.” Id. at 117.
This Case
On September 30, 2005, the postconviction court granted Phillips’ motion to correct his sentence, ordering the DOC to apply original jail-time credit and to compute and apply credit for all previously served time. The DOC applied this court-ordered credit which, along with gain-time, resulted in a recalculated expiration of sentence date of August 31, 2005. Thereafter, on December 6, 2005, the State commenced commitment proceedings against Phillips by having the DOC transfer Phillips to the custody of the DCF pursuant to section 394.9135(1), which provides:
If the anticipated release from total confinement of a person who has been convicted of a sexually violent offense becomes immediate for any reason, the agency with jurisdiction shall upon immediate release from total confinement transfer that person to the custody of the [DCF] to be held in an appropriate secure facility.
§ 394.9135(1), Fla. Stat. (2005). We initially determine that Larimore’s construction of section 394.9135 controls the issue before us. Therefore, in order for the circuit court to properly exercise jurisdiction over the commitment petition, the individual must have been in lawful custody at the time the initial steps were taken under section 394.9135. Larimore, 2 So.3d at 117.
The question before us is whether Phillips was in lawful custody at the time commitment proceedings were initiated which occurred after the corrected expiration of sentence date. Phillips contends he was not in lawful custody; the State disagrees. The State argues that Larimore implies that an incarcerative sentence subject to an immediate termination due to a proper award of gain-time or credit for time previously served is “lawful custody” under section 394.9135, citing to footnotes four and eight of the opinion. We are not persuaded by the State’s definition of “lawful custody” under section 394.9135.
In Larimore, we stated that section 394.9135(1), “would occur, for example, where the inmate obtains an order for release from an incarcerative sentence.” 2 So.3d at 109. We then said in footnote four:
This interpretation is confirmed by Senate staff analyses on chapter 99-222, Laws of Florida, which added section 394.9135. The Florida Senate Committee on Children and Families’ staff analysis stated that the section addresses situations where, “because of unforeseen circumstances, it is anticipated that a person’s release from total confinement will become immediate. This section ... would assist in dealing with cases such as when inmates successfully chal *1242 lenge gain-time and.early release statutes and win early judicially mandated release from prison.” Fla. S. Comm, on Child. & Fams., CS for SB 2192 (1999) Staff Analysis 25 (Mar. 30, 1999); see also Fla. S. Comm, on Judiciary, CS for SB 2192 (1999) Staff Analysis 12 (Apr. 8, 1999) (stating that section 394.9135 “provide[s] an expedited involuntary civil commitment process for a person whose release becomes imminent due to factors such as successful gain-time challenges and early release statutes”). The section is intended to assist the Department of Children and Families and state attorneys with expediting cases in such circumstances. Child. & Fams. Comm. SB 2192 Analysis at 25; Judiciary Comm. SB 2192 Analysis at 12.
Id. at 109 n. 4. It is clear that the staff analyses quoted in footnote four demonstrate that section 394.9135 was enacted as a safety valve for certain situations, including where a postconviction court or an appellate court rules in the defendant’s favor, thereby entitling the defendant to credit for time previously served and/or gain-time. We do not find, however, any intention on the part of the Legislature to authorize the State to first travel under section 394.9135 after an inmate’s sentence expires. To the contrary, the staff analy-ses explain that section 394.9135 addresses situations where a release “will become immediate” or “becomes imminent.” Thus, section 394.9135 would be utilized in situations where the award of credit and/or gain-time causes an incarcerative sentence to expire in the immediate future.
After stating our holding in Larimore— that the Act requires individuals to be in lawful custody when commitment proceedings are initiated — we said in footnote eight:
In this case Larimore’s entire resen-tencing was unlawful. Thus, we do not reach the question of whether section 394.9135, Florida Statutes, would allow the State to take steps to initiate a commitment proceeding against a person who while in lawful custody obtains an order for immediate release for any reason. That issue is not before us.
Id. at 117 n. 8. We emphasized “while in lawful custody” and thus the issue contemplated in footnote eight hinges on whether or not the State initiated commitment proceedings while the individual was in lawful custody.
We hold that lawful custody under section 394.9135(1) requires the State to initiate commitment proceedings prior to the expiration of sentence date. When the anticipated release of a corrected sentence is imminent, the DOC may properly initiate the transfer of the individual to the custody of the DCF prior to the expiration of the individual’s incarcerative sentence pursuant to section 394.9135(1). Conversely, if the State first initiates commitment proceedings under section 394.9135(1) after the actual expiration of sentence date — which was accelerated due to credit for time-served and/or an award of gain-time — the individual is not in lawful custody and the circuit court is without jurisdiction to adjudicate the commitment petition.
Turning to the case at hand, Phillips was not in lawful custody when the State initiated commitment proceedings on December 6, 2005, because his sentence expired on August 31, 2005.[11] Consequently, the circuit court lacked jurisdic *1243 tion over the commitment petition. We note that nothing in the record suggests that Phillips intentionally delayed the filing of his pro se motion to correct his sentence in order to deprive DCF of jurisdiction. In fact, Phillips’ motion was filed almost five months before the recalculated expiration of sentence date of August 31, 2005.[12]
The dissenters argue that “[t]he majority’s decision makes clear that ... offenders [subject to the Jimmy Ryce Act] have every incentive to avoid the correction of any error that extends the period of their confinement until they are no longer in ‘lawful custody.’ ” Dissenting op. at 1248. The dissent also quotes Judge Altenbernd, who concurred in part and dissented in part, in the decision below: “Phillips should not be allowed to deprive the [DCF] of jurisdiction over him by his own decision to forego an appeal and to delay a postconviction motion so that, on recalculation, his sentence expired before the un-preserved error was corrected.” Dissenting op. at 1248 (quoting Phillips, 69 So.3d at 957 (Altenbernd, J., concurring in part and dissenting in part)). However, the dissent omits Judge Alternbernd’s acknowledgment that Phillips may have wanted the trial court to award him credit before his recalculated sentence expired. See Phillips, 69 So.3d at 957 n. 8 (Altenbernd, J., concurring in part and dissenting in part) (“Admittedly, Mr. Phillips may have hoped that the trial court would resolve his motion prior to the end of August, but the resources of our trial courts are overwhelmed by such motions and this delay is not an unusual delay.”).
Individuals subject to the Act (i.e., prisoners who have been convicted of a sexually violent offense) do not have the power to unilaterally deprive a circuit court of jurisdiction over a commitment petition. In other words, whether a circuit court has jurisdiction over a commitment petition does not rest solely on the action or inaction of the defendant. Separate and apart from section 394.9135, the State is authorized to initiate commitment proceedings under section 394.913. Under this provision, the DOC must give written notice to the multidisciplinary team of a housed inmate who has been convicted of a sexually violent offense at least 545 days prior to that individual’s anticipated release. § 394.913(l)(a), Fla. Stat. (2005). If the inmate’s prison sentence is less than 545 days, then the DOC must furnish notice “as soon as practicable.” Id. Accordingly, the State is well-equipped to counteract an inmate’s subjective intent to delay the filing of a motion to correct an illegal sentence. In addition, the State at sentencing has a compelling interest in ensuring that the sentencing order is error free, including that the defendant has been awarded proper credit for the time served prior to the imposition of the sentence.[13]
The State attempts to distinguish Lari-more from the instant case in that Lari-more involved an entirely unlawful sentence whereas Phillips’ sentence was legal except that the time-served credit and gain-time award were incorrect. This argument has no merit. It is significant that *1244 just like the individual in Larimore, Phillips, too, was in unlawful custody of the DOC when initial steps were taken to initiate civil commitment proceedings against him. Furthermore, as we said in Lari-more, which is equally applicable here, “[Interpreting the Jimmy Ryce Act as not requiring lawful custody for individuals who had been incarcerated at some point after the effective date of the Act but are not in lawful custody when commitment proceedings are initiated would be contrary not only to the overall intent of the Act but ‘would be contrary to the basic tenets of fairness and due process.’ ” 2 So.3d at 115 (quoting Atkinson, 831 So.2d at 174).
Contrary to the State’s contention, approving the decision of the district court below does not render section 394.9135 meaningless. Section 394.9135 “would apply where an inmate is about to be immediately released from an incarcerative sentence and the detailed procedures of section 394.913 and section 394.915(1) have not yet been followed to initiate commitment proceedings and retain the person in custody.” Id. at 109-10 (footnote omitted). In addition, section 394.9135 would conceivably apply to executive clemency proceedings pursuant to Chapter 940, Florida Statutes, as well as conditional medical releases under section 947.149, Florida Statutes.
Due Process
“[Cjivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.” Addington v. Texas, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). Under the Act, the trial court must conduct a trial to determine whether the individual is a sexually violent predator within thirty days after the finding of probable cause. § 394.916(1), Fla. Stat. (2005). In State v. Goode, 830 So.2d 817 (Fla.2002), we held the thirty-day time limit for bringing an individual to trial is mandatory, finding that the Legislature intended “scrupulous compliance.” Id. at 821, 826. Here, Phillips’ sentence expired on August 31, 2005, and Phillips was transferred to DCF on December 6, 2005, where he remained until at least October 10, 2011, when we ordered Phillips’ immediate release.[14] Thus, after the expiration of his sentence, Phillips was unlawfully held in the State’s custody for more than six years without the trier-of-fact ever finding Phillips a sexually violent predator.[15] Clearly, this unlawful detention seriously infringed upon Phillips’ due process rights.
We urge all participants during sentencing to make sure that the sentencing order accurately reflects the amount of credit the defendant is entitled to so that the DOC may properly calculate the individual’s anticipated release date when the individual begins serving his or her sentence. With a correctly calculated anticipated release date determined from the outset, the DOC may then properly comply with the requirement of furnishing written notice pursuant to section 394.913. This allows the State to initiate the commitment trial “well in advance of the [inmate’s] date of release from prison [so that] the due process concerns of commitment beyond imprison *1245 ment would be substantially alleviated.” Goode, 830 So.2d at 826.
The dissenters would recede from the Atkinson and Larimore decisions, dissenting op. at 1247, and find that “no constitutional ground has been established to preclude application of the Act to Phillips,” dissenting op. at 1246. While the State has a significant interest in “creatfing] a civil commitment procedure for the long-term care and treatment of sexually violent predators,” § 394.910, Fla. Stat. (2005), such interest must be balanced against the constitutional guarantee of due process of law. We have expressed that based on this constitutional ground the Act requires lawful custody. See Larimore, 2 So.3d at 117 (“Because the Jimmy Ryce Act, by its express terms, is founded upon the concept that the individual be in lawful custody when any portion of the commitment proceedings are initiated, and because of the due process considerations set forth above, we conclude that the Act requires that the individual be in lawful custody when commitment proceedings are initiated.”) (emphasis added).[16]
CONCLUSION
Based on the foregoing, we hold that Phillips was not in lawful custody at the time the commitment procedures were initiated under the Act because his incarcera-tive sentence had already expired. Therefore, we answer the certified question in the negative, and approve of the Second District’s decision rendered below.
It is so ordered.
PARIENTE, LEWIS, LABARGA, and PERRY, JJ., concur.
CANADY, J., dissents with an opinion, in which POLSTON, C.J., concurs.

. On October 21, 2005, Phillips filed a pro se motion to clarify the postconviction order, stating that the order failed to inform the DOC of the time he spent incarcerated in Georgia. On November 8, 2005, treating it as a motion for rehearing, the postconviction court denied the motion, reasoning that the original sentencing order clearly contemplated credit for the time he was imprisoned in Georgia.

. The Florida Legislature made explicit findings as to sexually violent predators:
[A] small but extremely dangerous number of sexually violent predators exist.... [who] generally have antisocial personality features which are unamenable to existing mental illness treatment modalities, and those features render them likely to engage in criminal, sexually violent behavior.... [T]he likelihood of sexually violent predators engaging in repeat acts of predatory sexual violence is high.... [T]he prognosis for rehabilitating sexually violent predators in a prison setting is poor, [and] the treatment needs of this population are very long term.
§ 394.910, Fla. Stat. (1999).

. At trial, if the trier of fact determines that the individual is a sexually violent predator, then he or she is committed to the custody of the DCF for "control, care, and treatment until such time as the person’s mental abnormality or personality disorder has so changed that it is safe for the person to be at large." § 394.917(2), Fla. Stat. (2005); see also § 394.919(1), Fla. Stat. (2005) (stating that the DCF secretary or the secretary’s designee must authorize the individual to petition the court for release if it is determined that the individual “is not likely to commit acts of sexual violence if discharged”); § 394.920, Fla. Stat. (2005) (governing petitions for release).

."Lawful custody” is expressed once in the Act, referring to an individual's status for the crime of escape or attempting to escape. See § 394.927(1), Fla. Stat. (2005).

. The term “total confinement” appears in both commitment procedures, sections 394.913 and 394.9135. See § 394.913(1)(a), Fla. Stat. (2005) ("[WJritten notice must be given: At least 545 days prior to the anticipated release from total confinement of a person serving a sentence in the custody of the Department of Corrections_”) (emphasis added); § 394.9135(1), Fla. Stat. (2005) ("If the anticipated release from total confinement of a person who has been convicted of a sexually violent offense becomes immediate for any reason, the agency with jurisdiction shall upon immediate release from total confinement transfer that person to the custody of the [DCF] to be held in an appropriate secure facility.”) (emphasis added).

. In Heggs, this Court held that the 1995 sentencing guidelines were unconstitutional as violative of the single-subject rule. 759 So.2d at 621.

. We also ruled, however, that no evidence obtained from Tanguay during the unlawful detention was to be used during the commitment proceedings. Tanguay, 880 So.2d at 537.

. In Tripp v. State, 622 So.2d 941 (Fla.1993), we held that "if a trial court imposes a term of probation on one offense consecutive to a sentence of incarceration on another offense, credit for time served on the first offense must be awarded on the sentence imposed after revocation of probation on the second offense.” Id. at 942 (footnote omitted).

. In Gordon, the Second District held that an individual released on conditional release was not in custody when the petition was filed, and therefore the State did not have jurisdiction to subsequently proceed against him under the Act. 839 So.2d at 720.

. Former section 916.35 was renumbered as section 394.915. See ch. 99-222, § 9, Laws of Fla. Although the text of section 394.915 no longer includes the "taken into custody” language, the title of section 394.915 still refers to such language. § 394.915, Fla. Stat. (2005). The failure to amend the title of section 394.915 to conform with the text of that section appears to simply be an oversight on the part of the Legislature.

. As Phillips was not in lawful custody, the situation described in footnote eight of inn-more is yet again not before us.

. Although the postconviction court's granting of Phillips’ motion to correct his sentence on September 30, 2005, did not explicitly order his immediate release, we question why this order did not prompt the State to immediately thereafter attempt to initiate the commitment proceedings.

. A lawyer representing a defendant subject to the Act who is aware of an unpreserved error in the sentencing order but decides to delay the seeking of the correction thereof in an attempt to deprive the circuit court of jurisdiction over the commitment petition may be found to have violated the Rules Regulating the Florida Bar. See Rule Regulating the Florida Bar 4-8.4(c), (d).

. No motion for expedited review was filed with this Court. Cf. Moore v. Pearson, 789 So.2d 316, 318 (Fla.2001) (“This Court accepted jurisdiction and granted DOC's motion to stay the mandate of the district court's decision pending our review of the case. In light of the stay and Pearson’s liberty interest, the Court granted expedited review of the cause.’’).

. We also noted in Goode, which was decided over ten years ago, that “often people [were] being detained for long periods after their scheduled release date without being taken to trial” and that "compliance with the thirty-day time limit for trial [was] rarely being practiced.” 830 So.2d at 825 n. 7.

. The dissent finds that the “plain language of the [Act] permits the initiation of proceedings against Larry Phillips.” Dissenting op. at 1246. The dissent mentions both federal and state court cases applying California's Sexually Violent Predator (SVP) Act, which “requires only actual custody not lawful custody." Dissenting op. at 1246 (quoting Atkinson, 831 So.2d at 174-75 (Harding, Senior Justice, dissenting)). Under the original version of California’s SVP Act, commitment proceedings were applicable to "an individual who [was] in custody under the jurisdiction of the [DOC].” People v. Hubbart, 88 Cal.App.4th 1202, 106 Cal.Rptr.2d 490, 508 (2001) (quoting Cal. Welf. & Inst.Code § 6601(a) (1995) (emphasis added)). However, "[i]n 1999, the [California] Legislature added the following language to [the SVP Act]: ... 'A petition shall not be dismissed on the basis of a later judicial or administrative determination that the individual’s custody was unlawful, if the unlawful custody was the result of a good faith mistake of fact or law.' ” Hubbart, 106 Cal.Rptr.2d at 509 (quoting Cal. Welf. & Inst. Code § 6601(a)(2) (1999)). Therefore, there is a significant distinction between Florida and California law pertaining to the involuntary commitment of sexual violent predators: the California Legislature, unlike with the Florida Legislature, declared that an inmate's unlawful custody will not preclude the trial court from having jurisdiction over a commitment petition when the unlawful custody was a result of a good faith mistake of fact or law.
We are mindful of the "jurisdictional disclaimer” provisions contained in the Jimmy Ryce Act, which are remarkably different from the California statutory provision referenced above. See § 394.913(4), Fla. Stat. (2005) ("The provisions of this section are not jurisdictional, and failure to comply with them in no way prevents the state attorney from proceeding against a person otherwise subject to the provisions of this part.”); § 394.9135(4), Fla. Stat. (2005) ("The provisions of this section are not jurisdictional, and failure to comply with the time limitations, which results in the release of a person who has been convicted of a sexually violent offense, is not dispositive of the case and does not prevent the state attorney from proceeding against a person otherwise subject to the provisions of this part.”). In Larimore, we determined that the "jurisdictional disclaimer” provisions “[did] not constitute a statutory waiver of the lawful custody requirement contained within the overall legislative scheme.” 2 So.3d at 106.