IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

VICTOR REED,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

Petitioner,

v.                                          CASE NO. 1D14-1147

STATE OF FLORIDA,

Respondent.

_____/

Opinion filed August 7, 2014.

Petition for Writ of Prohibition.

C. Michael Williams, Jacksonville, for Petitioner.

Pamela Jo Bondi, Attorney General, and Charles R. McCoy, Senior Assistant
Attorney General, Tallahassee, for Respondent.

PER CURIAM.

Victor Reed petitions for a writ of prohibition to review the trial court's order

denying his motion to dismiss the involuntary civil commitment petition filed against

him under the Jimmy Ryce Act.[1]  Reed contends that the trial court lacks jurisdiction

over the petition because he was not in "lawful custody" when the commitment process

---

[1] §§ 394.910-.932, Fla. Stat. (2012).

was initiated.  We agree.  Accordingly, we grant the petition for writ of prohibition.

**Factual and Procedural Background**

On May 23, 2013, Reed pled guilty to multiple felonies, including three counts of sexual battery, and the trial court sentenced him to the custody of the Department of Corrections (DOC) for a negotiated term of 481 days, with credit for 481 days (i.e., time served).  After sentencing, Reed was returned to his pre-trial detention facility – the Duval County Jail – in order to be "processed out."

Reed was still in custody the following afternoon, May 24, 2013, when DOC notified the Department of Children and Families (DCF) that Reed was a potential Jimmy Ryce inmate and that he was scheduled to be released that day due to the end of his sentence.  Several hours later, DCF responded with a "detainer" letter directing DOC to transport Reed to the Florida Civil Commitment Center (FCCC) "immediately upon his release from the Department of Corrections."  That night, at approximately 8:00 p.m., Reed was "released" from the Duval County Jail and transported to the FCCC.  Reed arrived at the FCCC at approximately 2:45 a.m. the following morning, May 25, 2013.

On May 29, 2013, the multidisciplinary team provided the state attorney a written report and recommendation based upon its clinical evaluation of Reed and its review of his records.[2]  The report recommended that Reed met the statutory definition

---

[2]  The report was untimely because, as acknowledged by the State, the 72-hour period

2

of a sexually violent predator.

The following day, May 30, 2013, the state attorney timely[3] filed a petition seeking to commit Reed to the custody of DCF under the Jimmy Ryce Act. The petition alleged that Reed has "a lengthy history of sexual battery and rape, spanning at least a decade or more" and that he "suffers from a mental abnormality and/or personality disorder that makes him likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care and treatment." The same day, the trial court found probable cause to believe that Reed was a sexually violent predator and ordered that he be maintained in DCF custody at the FCCC pending further order.

On December 9, 2013, Reed filed a motion to dismiss the petition for lack of jurisdiction. The motion argued that (1) Reed was not in "total confinement"[4] when

_____

in section 394.9135(2) expired on May 28, 2013. This is not a jurisdictional defect, see § 394.9135(4), Fla. Stat. (2012); Larimore v. State, 2 So. 3d 101, 112-13 (Fla 2008), and Reed does not argue that he was prejudiced by the tardy report.

[3] See § 394.9135(3), Fla. Stat. (2012) (requiring the state attorney to file the commitment petition within 48 hours after receipt of the written report and recommendation from the multidisciplinary team).

[4] "Total confinement" is defined to mean that

> the person is currently being held in any physically secure facility being operated or contractually operated for the Department of Corrections, the Department of Juvenile Justice, or the Department of Children and Family Services. A person shall also be deemed to be in total confinement for applicability of provisions under this part if the person is serving an incarcerative sentence under the custody of the

3

the State initiated the commitment process because, at the time of his convictions, he was in the Duval County Jail and he was not, and had not been, in the custody of DOC, the Department of Juvenile Justice, or DCF, and (2) Reed was not in "lawful custody" when the commitment process was initiated on May 24, 2013, because his time-served sentence had expired the previous day.

The trial court denied the motion to dismiss. The court determined that Reed was lawfully in State custody when the commitment process was initiated on May 24, 2013, because "the Duval County Jail lacked authority to release [Reed] until approved by the State Department of Corrections." Reed timely appealed the trial court's order, and he also sought review of the order by filing a petition for writ of prohibition. The appeal, Case No. 1D13-6196, was subsequently dismissed as "duplicative" of this case.

Reed raises the same two arguments in the petition for writ of prohibition that he raised in the motion to dismiss. In response, the State argues that (1)(a) the Jimmy Ryce Act only requires the respondent to be in "lawful custody" – and not "total confinement" – when the commitment process is initiated, and in any event, (b) Reed was in "total confinement" under the second sentence of the statutory definition because, upon sentencing, he was remanded to the custody of DOC for time served,

---

Department of Corrections or the Department of Juvenile Justice and is being held in any other secure facility for any reason.

§ 394.912(11)(a), Fla. Stat. (2012).

4

whereupon his previously-served time in the Duval County Jail was effectively converted to prison time; and (2) Reed was in "lawful custody" at the time the commitment process was initiated because DOC was entitled to a reasonable period to "process out" Reed after the expiration of his sentence and the "detainer" letter lodged by DCF and Reed's transfer to the FCCC occurred during that period. We agree with the State on the first point without further comment, but we disagree with the State on the second point for the reasons that follow.

**Analysis**

In Larimore, the Florida Supreme Court explained that the commitment process under the Jimmy Ryce Act can be initiated against a person who has been convicted of a sexually violent offense in one of two ways: (1) under section 394.913, Florida Statutes, by giving notice to the multidisciplinary team and state attorney at least 545 days before the person's anticipated release from total confinement; or (2) under section 394.9135, Florida Statutes, by transferring the person to the custody of DCF upon immediate release from total confinement. See 2 So. 3d at 108. Here, the State initiated the commitment process under section 394.9135.

Section 394.9135(1) provides that when a person who has been convicted of a sexually violent offense is about to be released, "the agency with jurisdiction shall upon immediate release from total confinement transfer that person to the custody of the Department of Children and Family Services to be held in an appropriate secure

5

facility." Although this statutory language plainly states that the transfer will occur

upon – meaning, "immediately or very soon after"[5] – the person's release from total

confinement, the Florida Supreme Court recently held that the transfer must occur prior

to the expiration of the person's sentence:

> We hold that lawful custody under section 394.9135(1) requires the State to initiate commitment proceedings prior to the expiration of sentence date. When the anticipated release of a corrected sentence is imminent, the DOC may properly initiate the transfer of the individual to the custody of the DCF prior to the expiration of the individual's incarcerative sentence pursuant to section 394.9135(1). Conversely, if the State first initiates commitment proceedings under section 394.9135(1) after the actual expiration of sentence date—which was accelerated due to credit for time-served and/or an award of gain-time—the individual is not in lawful custody and the circuit court is without jurisdiction to adjudicate the commitment petition.

State v. Phillips, 119 So. 3d 1233, 1242 (Fla. 2013); see also Larimore, 2 So. 3d at

110-11 ("[T]he legislative intent of the Jimmy Ryce Act is that the person is in lawful

custody at the time any initial steps are taken in the commitment process under either

section 394.913 or 394.9135.") (emphasis added); State v. Atkinson, 831 So. 2d 172,

174 (Fla. 2002) (construing the Jimmy Ryce Act to require "lawful custody," rather

than "actual custody").[6]

---

[5] See, e.g., http://dictionary.reference.com/browse/upon?s=t
[6] We share Judge Lawson's views that the judicial gloss placed upon section 394.9135 by these decisions renders the statute largely meaningless, but we are nevertheless bound by these decisions. See Evans v. State, 125 So. 3d 799, 803-04 (Fla. 5th DCA 2013) (Lawson, J., concurring specially).

Here, Reed's transfer to the FCCC did not occur until the day after his sentence expired at which point he was no longer in "lawful custody" for purposes of the Jimmy Ryce Act. Accordingly, the trial court was without jurisdiction to adjudicate the commitment petition. See Phillips, 119 So. 3d at 1234 ("[B]ecause Phillips' sentence had expired at the time the State initiated commitment proceedings under the Jimmy Ryce Act, Phillips was not in lawful custody, and consequently, the circuit court lacked jurisdiction over the commitment petition.").

We find additional support for this conclusion in Morel v. State, 2014 WL 1908830 (Fla. 4th DCA May 14, 2014). The defendant in that case, Morel, was the subject of a commitment proceeding initiated in 2002 that languished for more than a decade based upon Morel's "'tactical' decision to 'purposely delay his trial.'" Id at *1 (citing Morel v. Wilkins, 84 So. 3d 226, 247 (Fla. 2012)). In 2012, Morel filed a motion to dismiss the proceeding in which he argued that he was not in "lawful custody" on April 18, 2002, when the State initiated the proceeding by transferring him to FCCC because, on April 17, 2002, he was resentenced to a prison term which had already expired based upon gain time and credit for time served. Id. at *2. The trial court denied the motion and Morel thereafter consented to his commitment, subject to a reservation of his right to appeal the denial of his motion to dismiss. Id.

On appeal, the Fourth District held that the trial court erred in denying the motion to dismiss. The court explained that, based upon Larimore and Phillips, Morel

7

"was <u>not in lawful custody</u> on April 18, 2002, when the civil commitment proceedings were initiated, because his sentence as recalculated had expired . . . []two and a half months prior[]." <u>Id.</u> at *3 (emphasis in original).  The court further explained that:

> no court in Florida had jurisdiction to allow the State to initiate civil commitment proceedings against [Morel] on April 18 once the State entered into the agreement with [Morel] on April 17 . . . creating the situation where [Morel] was then continuing to serve time on an <u>expired</u> sentence, <u>not</u> a sentence to expire <u>in the future</u>.  Pursuant to <u>Phillips</u>, the State cannot utilize the immediate release provision of the Jimmy Ryce Act on April 18, 2002, to cover its failure to fully think through the consequences of the agreement it entered into on April 17, 2002.

<u>Id.</u> (citations omitted and emphasis in original). The same is true here; the State cannot utilize section 394.9135(1) on May 24, 2013, to cover its failure to fully think through the consequences of the time-served plea agreement it entered into on May 23, 2013.

We have fully considered all of the State's arguments in support of the trial court's order, but find only one that merits discussion:  that <u>Larimore</u> and <u>Phillips</u> are not controlling because, unlike the respondents in those cases, Reed obtained an order for immediate release <u>while he was in lawful custody</u>, not after his sentence had expired.  We are not persuaded by this argument.

The State is correct that <u>Larimore</u> and <u>Phillips</u> did not address the question of whether section 394.9135 would allow the State to take steps to initiate a commitment proceeding against a person who, like Reed, obtains an order for immediate release while he was in lawful custody.  <u>See</u> <u>Larimore</u>, 2 So. 3d at 117 n.8 ("[W]e do not reach

8

the question of whether section 394.9135, Florida Statutes, would allow the State to take steps to initiate a commitment proceeding against a person who <u>while in lawful custody</u> obtains an order for immediate release for any reason.") (emphasis in original); <u>Phillips</u>, 119 So. 3d at 1243 n.11 (noting that "the situation described in footnote eight of <u>Larimore</u> is yet again not before us").  However, as we read the broad language in <u>Phillips</u>, even if the person obtained an order for immediate release while in lawful custody, the State would still have to take steps to initiate the commitment process <u>before</u> the person's sentence expires.  <u>See</u> 119 So. 3d at 1242 ("We hold that lawful custody under section 394.9135(1) requires the State to initiate commitment proceedings prior to the expiration of sentence date.").  That did not happen here; the State did not take any steps to initiate the commitment process until the day <u>after</u> Reed's sentence expired.  Accordingly, notwithstanding the distinction noted by the State, we find <u>Larimore</u> and <u>Phillips</u> controlling here.

## Conclusion

In sum, for the reasons stated above, we grant the petition for writ of prohibition and direct the trial court to dismiss the commitment proceeding against Reed with prejudice[7] and to order his release from the FCCC.  However, because we recognize

---

[7] Although dismissal "with prejudice" is mandated by <u>Larimore</u> (<u>see</u> 2 So. 3d at 117) and <u>Phillips</u> (<u>see</u> 119 So. 3d at 1236), that does not preclude the State from initiating a commitment proceeding against Reed in the future if he is incarcerated for another offense.  <u>See</u> <u>Ward v. State</u>, 986 So. 2d 479, 481 (Fla. 2008); <u>Taylor v. State</u>, 65 So. 3d 531, 535 (Fla. 1st DCA 2011).

that this case presents a slightly different situation than <u>Larimore</u> and <u>Phillips</u> and extends those decisions to their logical – but potentially unintended – extreme, we certify the following question of great public importance to the Florida Supreme Court:

> DOES A TRIAL COURT HAVE JURISDICTION OVER A PETITION FILED UNDER THE JIMMY RYCE ACT AGAINST A PERSON WHO OBTAINS AN ORDER FOR IMMEDIATE RELEASE WHILE IN LAWFUL CUSTODY WHERE THE COMMITMENT PROCESS IS INITIATED UNDER SECTION 394.9135, FLORIDA STATUTES, AFTER THE PERSON'S SENTENCE EXPIRED BUT BEFORE HE IS ACTUALLY RELEASED?

PETITION GRANTED; QUESTION CERTIFIED.

LEWIS, C.J., WOLF and WETHERELL, JJ., CONCUR.