IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

WILLIAM JUNIOR BARBER,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

    Petitioner,

v.

CASE NO. 1D16-2063

STATE OF FLORIDA,

    Respondent.

_____/

Opinion filed June 30, 2016.

Petition for Writ of Prohibition -- Original Jurisdiction.

Nancy A. Daniels, Public Defender, and Glen P. Gifford, Assistant Public Defender, Tallahassee, for Petitioner.

Pamela Jo Bondi, Attorney General, and Thomas H. Duffy, Assistant Attorney General, Tallahassee, for Respondent.

PER CURIAM.

William Junior Barber seeks review of the trial court's order denying his motion to dismiss an involuntary civil commitment petition filed against him under the Jimmy Ryce Act. §§ 394.910-932, Fla. Stat. He claims that he was not in lawful custody at the time the commitment process was initiated, rendering the petition untimely and compelling his immediate release. We disagree, and deny the petition.

In May 2013, Barber was arrested and charged with one count each of kidnapping and sexual battery. The arrest report stated that Barber approached the victim, a homeless woman, and dragged her into an alcove behind a building, where he forced her to perform oral sex on him. Over a year later, pursuant to a negotiated plea, the kidnapping charge was dropped and Barber entered a guilty plea to the lesser offense of felony battery in lieu of sexual battery.

At the sentencing hearing, held on Thursday, September 11, 2014, the trial court accepted Barber's plea and sentenced him to 493 days' imprisonment with 493 days' credit for time served. At sentencing, the trial court advised Barber that he could be subject to involuntary civil commitment under the Jimmy Ryce Act as a result of his plea, and Barber indicated that he understood. Defense counsel noted that Barber understood the possibility that he might remain in confinement for several days while being processed out.

The hearing concluded at 10:23 a.m., and within a matter of hours, at 3:53 p.m., the Florida Department of Children and Families ("DCF") notified the State Attorney, the Florida Department of Corrections, and the Florida Civil Commitment Center ("Center") that because Barber may qualify for involuntary commitment under the Jimmy Ryce Act, DCF was issuing a detainer against him. See § 394.9135(1), Fla. Stat. At approximately 9:35 p.m., Barber was transferred from the Duval County Jail and transported to the Center.

On Monday, September 15, 2014, the DCF's Multidisciplinary Team submitted its written assessment and recommendation to the State Attorney, finding that Barber met the definition of a sexual predator under the Act. See § 394.9135(2), Fla. Stat. The next day, September 16, 2014, at 11:06 a.m., the State Attorney filed a petition with the circuit court, alleging Barber to be a sexually violent predator. Id. § 394.9135(3).[1]

Almost six months later, on March 6, 2015, Barber moved to dismiss the state's petition, which the trial court denied on April 20, 2015. Rehearing was denied on July 15, 2015. Nine months later, Barber's "Emergency Petition for Writ of Prohibition" was filed in this Court on May 9, 2016.

Barber raises three issues. First, he asserts the State's civil commitment petition failed to meet the prerequisites for declaring him a sexually violent predator. Second, he claims that the State's petition was untimely. Finally, he argues that at the time of

---

[1] One of the psychiatric reports conducted as part of the Multidisciplinary Team's investigation included a detailed case history for Barber. The report found that Barber had been charged with a total of six crimes with an apparent sexual motivation dating back to 1998. Of these, five included, *inter alia*, sexual battery charges involving multiple instances of Barber forcing his victims to engage in oral, vaginal, and anal sex with him, occasionally at weaponpoint, and one included a charge of attempted sexual battery. At least three of the victims were described in the report as being homeless, all were strangers to Barber whom he approached in public places, and in two cases, all charges were dropped due to the victims being unable to be located. In one case, the sexual battery charge was dropped due to the victim's prostitution conviction and Barber was convicted of simple battery only, receiving a sentence of six months' imprisonment; the report cites a letter to the victim from the State Attorney indicating that the state elected to drop the charge because the victim failed to report the conviction to law enforcement, and because, the letter indicated, her testimony could have been impeached on the basis of the conviction. In the remaining cases, Barber was able to plead down to reduced battery charges for reasons that are not made clear in the report.

3

his transfer to the Center, he was not in "lawful custody" and that he is therefore entitled to immediate release under <u>Reed v. State</u>, 159 So. 3d 845 (Fla. 1st DCA 2014) (certifying a question of great public importance), <u>rev. granted</u>, 160 So. 3d 898 (Fla. 2014), <u>rev. dismissed</u>, 161 So. 3d 397 (Fla. 2015).  As to this latter point, he asserts that his sentence (for time served) immediately expired at the conclusion of the sentencing hearing, and from that moment onward, his custody was unlawful, precluding the State from initiating a Jimmy Ryce Act proceeding against him.[2]

As to the first issue, we conclude that the State's petition complied with the requirements of section 394.9135(1)(a), Florida Statutes.  As the State concedes, this section provides the only statutory grant of authority that could apply to Barber's situation, thereby rendering compliance with other subsections (394.9135(1)(b), 394.9125(1), and 394.9125(2)) immaterial. Subsection (1)(a) states:

> If the anticipated release from total confinement of a person who has been convicted of a sexually violent offense becomes immediate for any reason, the agency with jurisdiction shall upon immediate release from total confinement transfer that person to the custody of the department to be held in an appropriate secure facility.

§ 394.9135(1)(a), Fla. Stat. (2014). This subsection applies because Barber's anticipated release from total confinement became "immediate" due to the imposition

---

[2]  In supplemental briefing, Barber claimed for the first time that his 493-day sentence should have expired the day before the hearing at which sentence was actually imposed.  This issue was not preserved for our review, but we note that "[a] sentence of imprisonment shall not begin to run before the date it is imposed, but the court imposing a sentence shall allow a defendant credit for all of the time she or he spent in the county jail before sentence." § 921.161(1), Fla. Stat. (2014).

of the time served sentence; and he was transferred "upon immediate release" to DCF's custody.

Barber asserts, however, that subsection (1)(a) cannot apply because his conviction for felony battery was not a "sexually violent offense," which the statute seemingly requires. But a review of the applicable definition of "sexually violent offense" undermines this argument. That definition says that a "sexually violent offense" is "*[a]ny criminal act that*, either at the time of sentencing for the offense or *subsequently during civil commitment proceedings under this part*, *has been determined beyond a reasonable doubt to have been sexually motivated.*" § 394.912(9)(h), Fla. Stat. (2014) (emphasis added). The italicized language reflects that for purposes of the Jimmy Ryce Act a "sexually violent offense" includes any criminal act (including Barber's felony battery conviction) that is "subsequently" determined to be proven "beyond a reasonable doubt to have been sexually motivated."[3] Here, the State's petition alleges that Barber has at least two convictions of felony battery in his criminal history, supported by factual assertions that they were sexually motivated. In addition, the Multidisciplinary Team's report alleges two other criminal convictions with allegations of sexual motivations, for a total of four convictions for crimes with apparent sexual motivations.[4] We conclude that the State's

---

[3] A "sexually motivated" crime is one whose purpose, in part, "was for sexual gratification." § 394.912(8), Fla. Stat. (2014).

[4] As mentioned in footnote one *supra*, charges in two of the six offenses described in the report were dismissed in their entirety due to an inability to locate the victims.

petition is facially valid under the authority of section 394.9135(1)(a).

As to the second issue, Barber argues that the State's petition was untimely (by less than an hour) because it was not filed within the 120-hour time limit in section 394.9125(4)(a), Florida Statutes. But section 394.9125 does not apply. Instead, section 394.9135 applies with its own, distinct time table (with rounding-up provisions) for the Multidisciplinary Team to provide its written assessment/recommendation (72 hours)[5] and for the State Attorney thereafter to file a petition (48 hours).[6] Here, Barber was transferred on Thursday, September 11, 2014, resulting in the 72-hour period ending on a weekend, Sunday, September 14, 2014. Accordingly, the Multidisciplinary Team's assessment/recommendation had to be filed "within the next working day," which was Monday, September 15, 2014. The

---

[5] Section 394.9135(2), Florida Statutes, states:

> Within 72 hours after transfer pursuant to paragraph (1)(a) . . . the multidisciplinary team shall assess whether the person meets the definition of a sexually violent predator. If the multidisciplinary team determines that the person does not meet the definition of a sexually violent predator, that person shall be immediately released. If at least two members of the multidisciplinary team, after all clinical evaluations have been conducted, determine that the person meets the definition of a sexually violent predator, the team shall provide the state attorney, as designated by s. 394.913, with its written assessment and recommendation within the 72-hour period or, if the 72-hour period ends after 5 p.m. on a working day or on a weekend or holiday, within the next working day.

[6] "Within 48 hours after receipt of the written assessment and recommendation from the multidisciplinary team, the state attorney, as designated in s. 394.913, may file a petition with the circuit court alleging that the person is a sexually violent predator and stating facts sufficient to support the allegation." § 394.9135(3), Fla. Stat. (2014).

completed assessment/recommendation was filed on that Monday morning.[7] The State Attorney had 48 hours from the receipt of the assessment/recommendation to file a petition. Its petition, filed at 11:06 a.m. on Tuesday, September 16, 2014, was not only timely, but a day early.

Finally, Barber argues he was not in lawful custody at the time of his transfer to the Center, and was therefore not "totally confined" as contemplated by subsection 394.9135(1)(a). Like the petitioner in Reed, Barber asserts that he is entitled to immediate release. Unlike Reed, which involved a situation where an inmate was not transferred until the day *after* his sentence had ended, the proceedings against Barber were initiated *the same day* that his incarceration would have otherwise ended. In Reed, this Court held that the trial court lacked jurisdiction because Reed's sentence had expired the day prior to his transfer; as such, he was not in "lawful custody." As noted in Reed, our supreme court in State v. Phillips, 119 So. 3d 1233, 1236-37 (Fla. 2013), held that "lawful custody under section 394.9135(1) requires the State to initiate commitment proceedings prior to the expiration of *sentence date*." (Emphasis added). Because Barber's transfer took place on *the same day* that he was sentenced, his sentence date had not yet expired. Indeed, Florida Administrative Code Rule 33-603.412, provides that a "sentence expires at midnight, but release may be granted at any hour on such release date." Barber was not granted release before midnight;

---

[7] The record reflects that the Multidisciplinary Team proceeded with diligence, initiating its review on Friday, September 12, 2014, and completing and filing one of two psychiatric reports over the weekend.

7

instead, the record reflects that Barber did not object to remaining incarcerated for a few more days and understood that commitment proceedings would probably be initiated against him. To accept Barber's argument, that he was no longer in lawful custody after the sentencing hearing concluded at 10:23 a.m., would render section 394.9135 irrelevant, which was specifically written to provide transfer authority in situations where an "immediate" release occurs, such as Barber's time-served sentence. Finding no basis for relief, we deny Barber's petition.

PETITION DENIED.

ROWE, MAKAR, and BILBREY, JJ., CONCUR.

8